**Ralph DICK and Nellie B. Dick**

v.

**UNITED STATES.**

No. 254-56.

United States Court of Claims.

Jan. 14, 1959.

**492**

Byron M. Gray, Topeka, Kan., for plaintiffs.

Herbert Pittle, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

WHITAKER, Judge.

Plaintiffs sue the defendant for just compensation for the taking of an easement of flight over their property described in the petition. Defendant admits liability; it is well established; and the sole question before the court is one of just compensation.

The dwelling house on plaintiffs' property is about 3,750 feet from the northwest end of the northwest-southeast runway at Forbes Air Force Base, near the city of Topeka, Kansas. The property fronts 1,526 feet on U. S. Highway 75. It comprises 107.61 acres, devoted primarily to farming.

The dwelling house sits back from the highway 200 feet. It consists of six rooms, a rear porch, with a sleeping porch above, and a full basement with concrete floor; it is of frame construction, with stucco exterior, plastered walls and hardwood floors. There is also a frame garage, with composition roof and a concrete floor, with ample space for two automobiles and for the storage of small tools. There is a quonset implement shed, 32 by 42 feet, with a metal arched roof, concrete floor and concrete foundation. The barn is 26 feet by 70 feet, and has a stock shed attached on two sides. It has a full loft for hay storage, and is equipped with a series of grain bins. All of the buildings are quite old, except for the house, garage, and implement shed.

There is also a trailer court north of the house, consisting of 20 house-trailer spaces. It has concrete walks, septic tanks, electric utility connections, with city water and electricity, and a combination bath and laundry building. It sits in a wooded area, providing ample shade.

All the witnesses agreed that the highest and best use of the frontage on Highway 75, extending back 300 feet, is for commercial purposes.

The trial commissioner has found, and we agree, that the highest and best use for the remaining property is for agricultural purposes. Plaintiffs' witnesses, however, based their valuation of the property on the theory that it was available for subdivision into residential sites. The commissioner concludes, however, that there is no reasonable probability of devoting it to such a use in the foreseeable future. The property lies 1¾ miles south of the city of Topeka, Kansas, but the growth of the city is in other directions, with little probability in the near future of any growth in the direction of this property. It is true that there is a subdivision to the north of the property, between it and the city of Topeka, but it is a low-cost, emergency subdivision, erected by the Government to take care of people who had been dis-

placed from their homes by a flood in 1951. There are no other housing developments between plaintiffs' land and the city limits of Topeka.

We see no reasonable probability of plaintiffs' property being devoted to a housing development at any time in the foreseeable future. We conclude, therefore, that, with the exception of that part of the property fronting on Highway 75 and extending back therefrom for a distance of 300 feet, it can best be utilized for agricultural purposes.

About two-thirds of plaintiffs' land and all of the land fronting on Highway 75, and the improvements on the property are in the approach zone for aircraft landing on the northwest-southeast runway, and there are from 2,000 to 4,500 flights per month.

About 30 percent of the landings at the Forbes Air Force Base are ground control approach landings, called GCA landings, and 70 percent are visual landings. The GCA glide slope, which means the downward path an airplane is directed to follow when it cannot see the ground and is landing on instruments, passes over plaintiffs' house at 210.9 feet above the top thereof, 204.5 feet above the top of the barn, and 191.6 feet above the top of the silo. When landing visually, airplanes pass about 300 feet above the structures on plaintiffs' land. In taking off, the airplanes pass at a height of about 400 feet over plaintiffs' home.

In addition, there is an absolute minimum glide angle, beginning at the end of the clear zone, 1,000 feet beyond the end of the runway, and rising one foot for every 50 feet along the ground. No structure may be erected above this glide angle. It passes a little over 70 feet above the top of plaintiffs' house, and about 80 feet above the top of the trailer court, taking into consideration both the distance of the house and the court from the end of the clear zone and also the difference in ground elevations. .

This glide angle is not the angle at which planes normally approach the runway. As noted above, the ground control approach passes 210 feet above plaintiffs' house, instead of 70 feet. The glide angle might be said to be the lowest possible angle at which airplanes can fly in approaching the runway, but an approach at this angle would bring them very low to the ground at quite a distance from the end of the runway, and would be dangerous. It might be said to be the minimum angle of approach with any degree of safety. Airplanes never fly this low unless they are in trouble and cannot help it.

These jet bombers make an almost deafening noise to anyone within their neighborhood. When flying over plaintiffs' house, no conversation in it is possible. The trial commissioner, at the request of the parties, went to the premises and witnessed the landing of a number of these airplanes. He said they made the loudest noise of any airplane he ever heard. When they pass over the house the windows rattle and the house itself vibrates. The propeller-driven airplanes are not so noisy.

The record shows that from 2,000 to 4,500 flights are made from the Forbes Air Force Base, 60 to 70 percent of which use the northwest-southeast runway, which passes over plaintiffs' house. The use and enjoyment of plaintiffs' home was much impaired by these planes passing over it. Plaintiffs, however, have continued to occupy it as their home.

The use and enjoyment of the portion of the land devoted to wholly agricultural use has been impaired very little. The use and enjoyment of the portion whose highest and best use is for commercial purposes has been impaired to some extent, but not so much as plaintiffs' residence. This is illustrated by what has happened to the plaintiffs' trailer court. For the first few weeks after airplanes began passing over the trailer court, some of the occupants left, but they soon returned, or others took their places, so that the court is as well occupied today as it was before the advent of the jet bombers.

This is accounted for, in part, by the fact that the proximity of the Forbes Air Force Base has created a greater demand for spaces in the trialer court. Due in large part to the proximity of the Air Force Base, 20,000 automobiles a day pass along Highway 75 in front of plaintiffs' property. The proximity of this Base has also tended to enhance the value of the other property whose best use is for commercial purposes. It is fair to say, we think, that the detriment to the value of the commercial property by the passage of the planes over it is approximately offset by the enhancement in its value by the proximity of the field. It is the proximity of the field that causes the planes to pass over this property and impair its value, and it is the proximity of the field that creates a greater demand for the property and thus tends to enhance its value. One about offsets the other.

 In arriving at just compensation there should be offset against the value of the thing taken and the damage to the remainder whatever enhancement in value may have resulted from the public work requiring the taking. United States v. Miller, 317 U.S. 369, 375, et seq., 63 S.Ct. 276, 87 L.Ed. 336; Aaronson v. United States, 65 App.D.C. 14, 79 F.2d 139; United States v. River Rouge Improvement Co., 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339; Reichelderfer v. Quinn, 287 U.S. 315, 323, 53 S.Ct. 177, 77 L.Ed. 331.

Taking all relevant factors into consideration, including the testimony of the expert witnesses, we agree with the commissioner that $15,000 represents just compensation for the diminution in value of the property resulting from the taking of the easement of flight, over and above the enhancement in its value due to the proximity of the Forbes Air Force Base. That easement is the right to fly airplanes of any kind over any part of plaintiffs' property at an altitude of 70 feet and above. Judgment for that amount is awarded, plus an amount computed thereon at the rate of four percent per annum from September 1, 1955, to.

the time of payment, all as just compensation for the taking.

Plaintiffs will execute a deed in fee simple conveying to defendant such an easement.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.