**Ray S. MATSON (1), Enid V. Matson (2), Bernard P. Nelson (3), and Anna B. Nelson (4)**

v.

**UNITED STATES.**

No. 268-56.

United States Court of Claims.
March 4, 1959.

affirmed the Department's action. This suit for reinstatement, filed March 4, 1954, is barred by laches."

Thomas Malone, St. Paul, Minn., for plaintiffs. William W. Essling, St. Paul, Minn., was on the brief.

Thomas L. McKevitt, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton for defendant.

REED, Justice (Retired), sitting by designation.

Plaintiffs are owners in fee of undivided interests in nine forty-acre contiguous plots in a section of land adjoining the municipal airport of Duluth, Minnesota.

■ This is an action to recover compensation for the taking of plaintiffs' property by the United States through its use of the property's navigable airspace, below minimum altitudes of flight, between June 1952 and June 1956, when the petition was filed.[1] Plaintiffs' petition sounds both in damages and as for a taking.

The facts are reported in detail in accompanying special findings. Essentially, jet-powered fighter aircraft owned and operated by the United States Air Force from the Duluth Municipal Airport take off and land at low levels over the plaintiffs' property lying immediately west of the airport. Their proximity to the plaintiffs' property is most accentuated in making instrument landings from west to east, in which case they cross the western end of the property at about 320 feet and the eastern end at about 85 feet in their descent to the runway. In other types of landings, and in all takeoffs, the aircraft describe varying patterns, some of which bring them over parts of the plaintiffs' property below the present minimum flight altitudes. Takeoff patterns, as well as the amount of noise involved, vary according to the design of the aircraft. Later models generally are somewhat less noisy and possess superior rates of climb. But all are exceedingly noisy. With flights made at frequent intervals the noise produced at low altitudes prevents the economic utilization of part of plaintiffs' land for residential purposes. We have found that only twenty acres in the southwest corner and twenty acres in the northwest corner of the total acreage had a residential potential, and that the defendant's flight activities adversely affected only the former. The highest and best use of the remainder of the total acreage has been found to be as a wood-lot.

Evidently the Government is using the airspace as and when it chooses and expects to continue so to use it indefinitely.

---

1. "Navigable airspace" was then defined as follows:

"'Navigable air space' means air space above the minimum altitudes of flight prescribed by regulations issued under this chapter." 49 U.S.C.A. § 401(24).

It is now defined by the Federal Aviation Act of 1958, 49 U.S.C.A. § 1301 et seq., as follows:

"'Navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations issued under this Act, and shall include airspace needed to insure safety in take-off and landing of aircraft." 72 Stat. 739.

S.Rep. No. 1811, 85th Cong., 2d Sess.; H.R.Reps. Nos. 2360 and 2556, 85th Cong., 2d Sess.

If damages result, a servitude would be imposed.[2]

Various heights for flight, depending upon population, congestion, and different conditions on the surface, have been fixed by the successive authorized authorities, now the Civil Aeronautics Board.[3] Generally the minimum safe altitudes are fixed at 1,000 feet for congested areas and 500 feet otherwise. Since 1937 the regulations on altitude have begun with words of this import, "Except when necessary for take-off or landing, no person shall operate an aircraft below the following altitudes."[4] In United States v. Causby, 328 U.S. 256, at page 260, 66 S.Ct. 1062, at page 1065, 90 L.Ed. 1206, the Supreme Court determined that airspace above the prescribed minimum safe altitudes, as then defined, was subject "to a public right of freedom of interstate and foreign air navigation," 49 U.S.C.A. § 180. See Braniff Airways, Inc. v. Nebraska State Board of Equalization and Assessment, 347 U.S. 590, 594, 74 S.Ct. 757, 98 L.Ed. 967. Now our Declaration of Policy in the Act of 1958 reads:

"Sec. 103. In the exercise and performance of his powers and duties under this Act the Administrator shall consider the following, among other things, as being in the public interest:

\* \* \* \* \* \*

"(c) The control of the use of the navigable airspace of the United States and the regulation of both civil and military operations in such airspace in the interest of the safety and efficiency of both;" 72 Stat. 740.

And the Public Right of Transit:

"Sec. 104. There is hereby recognized and declared to exist in behalf of any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States." 72 Stat. 740.

In the Causby case, the path of glide was held not to be in the "navigable airspace which Congress placed within the public domain," at pages 263–266, of 328 U.S. at pages 1067 of 66 S.Ct. This conclusion was reached, although the then authorized regulation in use had a height exception for take-off and landing. And the Court determined:

"We think that the landowner, as an incident to his ownership, has a claim to it and that invasions of it are in the same category as invasions of the surface." At p. 265 of 328 U.S. at page 1068 of 66 S.Ct.

Today there is a different statute. Note 1, supra. We do not think, however, that the change in the definition of navigable airspace affects plaintiffs' causes of action. The Government's easement over plaintiffs' property may be perpetual. Although today navigable airspace with its public right of transit, 72 Stat. 740, § 104, includes the glide, its use by the United States or other aeroplane operators at heights below the minimum altitudes of flight except where necessary for take-off or landing,[5] may require compensation. The reasoning of the Causby case leads to this conclusion. It was there said:

"The superadjacent airspace at this low altitude is so close to the land that continuous invasions of it

---

2. Portsmouth Harbor Land & Hotel Co. v. United States, 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287; United States v. Causby, 328 U.S. 256, 262, 66 S.Ct. 1062, 90 L.Ed. 1206; 60 F.Supp. 751; 75 F.Supp. 262, 104 Ct.Cl. 342, 109 Ct.Cl. 768. On remand of the Causby case for determination of the character of the easement, the Court of Claims found the easement had been abandoned and entered judgment for damages only, not for the taking. 75 F.Supp. 262, 109 Ct.Cl. 768.

3. 72 Stat. 741, Sec. 201.

4. 14 CFR (Civil Aviation) § 60.17; 2 Fed. Reg., Part 2, 2184; 10 Fed.Reg. 5066. Cf. William B. Harvey, Landowners' Rights in the Air Age, 56 Mich.L.Rev. at 1318.

5. 14 CFR § 60.17.

affect the use of the surface of the land itself." At p. 265, of 328 U.S. at page 1068 of 66 S.Ct.

Plaintiffs' allegation is for a taking by continuous flying "at low levels for the purpose of landing at and taking off from" the airport.

While the usefulness of air transportation admonishes everyone that outmoded concepts of property rights must not limit its development, fairness requires that landowners be compensated reasonably for operations that immediately and directly limit the exploitation of their properties. Airports which normally have the power of eminent domain might have extended their ownership of aviation rights for their customers over lands within the glide area. This would obviate suits against aeroplane operators but lack of resources and of knowledge as to possible future aviation developments has limited the use of such arrangements.[6]

■ It would appear from the Causby decision that flights above the 500-foot regulated ceiling are beyond the reach of the landowner's objection to interference with his property rights. As to such use, he is in the position of abutting owners along public highways or railroad rights-of-way.[7] The normal immunity to private actions, "based upon those incidental inconveniences that are unavoidably attendant" upon operations, applies we think to air routes allowable under public authority.

Defendant's objections and exceptions to the report of the Commissioner and its request for special and additional findings have all been examined. Nothing, it seems to us, requires any change in the findings as submitted.

We conclude as a matter of law from the facts of this case that the increased burden placed upon this property by defendant's use of the jet planes in the lower reaches of defendant's navigable airspace is a taking of a perpetual easement of flight by defendant for its planes over the entire property of plaintiffs' 357.7 acres[8] at elevations above eighty-five feet. See Findings of Fact 11(c) and (d), and 12. Plaintiffs will execute a deed conveying to defendant such an easement.

The taking took place August 1, 1953, when the jets began to fly.[9] Considering all relevant facts, we conclude further as a matter of law that plaintiffs are entitled to recover of and from the United States five thousand eight hundred dollars ($5,800), as just compensation for the taking, with interest from August 1, 1953, at four percent per annum to the time of payment, subject to the execution of the deed referred to in the preceding paragraph.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.

6. See Gen.Stat. of N.Car., 2B, ch. 63, §§ 6 and 31; Fixel, Law of Aviation (3d ed.) § 195; Rhyne, Municipal Law 489; Rhyne, Airports and the Courts (1944), ch. VII; Minn.Stat.Anno. (1957) § 360.-032. Cf. Civil Aviation Act (1949), 12 and 13 Geo. 6, c. 67, Pt. III, § 24.

7. See Richards v. Washington Terminal Co., 233 U.S. 546, 555, 34 S.Ct. 654, 58 L.Ed. 1088; Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328; United States v. Central Eureka Mining

Co., 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed. 2d 1228.

8. 2.3 acres had been previously purchased as a site for a marker station. See City of Newark, N. J. v. Eastern Airlines, D.C., 159 F.Supp. 750, 760; Dick v. United States, Ct.Cl., 169 F.Supp. 491.

9. Highland Park, Inc. v. United States, Ct.Cl., 161 F.Supp. 597; Herring v. United States, Ct.Cl., 162 F.Supp. 769.