**Lester B. DAVIS and Marjorie W. Davis**
v.
**UNITED STATES.**
No. 99-59.

United States Court of Claims.
Nov. 1, 1961.

Daniel W. Gaiser, Spokane, Wash., for plaintiffs. Robert E. Stoeve and William J. Powell, Spokane, Wash., on the brief.

Herbert Pittle, Washington, D. C., with whom was Asst. Atty. Gen., Ramsey Clark, for defendant.

LARAMORE, Judge.

Plaintiffs' claim is founded upon frequent flights at unreasonably low levels of large numbers of jet B–52 bombers and KC–135 jet tankers owned and operated by the defendant in conjunction with its use of Fairchild Air Force Base located in Spokane County, Washington. Plaintiffs claim that said flights were so numerous, low and noisy, that they have amounted to a substantial taking of their property and have severely depreciated the market value of said property, rendering it totally valueless as an owner-occupied farm.

On the other hand, the defendant contends that the taking occurred earlier and that as a consequence thereof plaintiffs' cause of action accrued in 1951 and is barred by the statute of limitations, 28 U.S.C. § 2501.

Defendant further contends that in the event the court finds the cause of action is not barred by the statute of limitations, supra, plaintiffs are entitled to just compensation in a lesser amount than that found by the trial commissioner.

At the outset, it should be noted that plaintiffs concede that to the extent their property was depreciated by flights of B–36 aircraft, it is now too late for them to be compensated for that loss. Therefore, the loss for which plaintiffs here seek compensation is that of the complete destruction of all residual value of the improvements on their farm which existed in March 1957.

Plaintiffs' position seems to us to be not only the correct one but consistent with the holding of the Supreme Court in United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, and various cases decided by this court. Highland Park, Inc. v. United States, 161 F.Supp. 597, 142 Ct.Cl. 269; Matson et al. v. United States, 171 F.Supp. 283, 145 Ct.Cl. 225. No. 268–56, decided March 4, 1959; Klein v. United States, No. 157–58, decided January 18, 1961.

The case of United States v. Causby, supra, teaches us that flights of aircraft over private land which are so low and frequent as to be a direct and immediate interference with the use and enjoyment of the land constitute a taking of a flight easement and an imposition of a servitude upon the land.

Here there can be no question, and the facts show, that there were low flights of defendant's aircraft over the land of plaintiffs. There also can be no question, and the facts show, that the B–52 jet aircraft were substantially noisier than the B–36 aircraft and that the use of B–52's made sleeping in plain-

tiffs' home impossible. As a result the home became uninhabitable, and the improvements on the farm, insofar as they related to the use of the property as an owner-occupied farm, were rendered substantially worthless.

True, the flights of B–36 aircraft diminished the value of plaintiffs' property, but the noise from the B–36's, while annoying and inconvenient, did not render their home uninhabitable or untenable, and it was possible to live with this annoyance. Proof of this is the fact that plaintiffs did continue to live in the home on the premises until the advent of the B–52 flights. Therefore, even if it could be said that a taking occurred in November 1951 when the B–36 bombers commenced flying over plaintiffs' land, it certainly was at most only a partial taking and not such a taking as occurred when the B–52 flights commenced. Furthermore, as stated previously, it is conceded by plaintiffs that it is now too late for them to be compensated for the earlier loss, and that loss is not a subject of this law suit.

This case is premised on the theory that in 1957 when the flights of B–52's and KC–135 jet aircraft commenced, the plaintiffs' premises lost such residual value for residential purposes as they may have had considering the flights of B–36 aircraft.[1]

In respect to the above, the facts show that in March 1957, before the commencement of flights by B–52 and KC–135 jet aircraft, the highest and best use of plaintiffs' premises was for agricultural purposes, as it had been before, with some residual value of the improvements thereon for residential purposes in connection with the operation of an owner-occupied farm. After the commencement of B–52 flights over plaintiffs' property, on or about March 26, 1957, plaintiffs' use and enjoyment of their

property was so adversely affected as to render substantially worthless the improvements on the property since plaintiffs' home was no longer inhabitable, and the other improvements were essentially related to the use of the property as an owner-occupied or residential farm.

■ Furthermore, it is clearly shown by the evidence that, while the property suffered some diminution in residential value because of the B–36 flights, the highest and best use of the property was for agricultural purposes and its value for such purposes remained the same. The evidence further shows that after the flights of B–52's commenced in March 1957 the use of the home for residential purposes became worthless. The other buildings, especially the barn, could be used only for temporary machinery and crop storage. It, therefore, was in March 1957 that a taking occurred and at that time plaintiffs' cause of action for the taking of residual value of the property accrued. Plaintiffs' petition was filed February 28, 1959, and the cause of action is not barred by the statute of limitations, supra.

Plaintiffs contend that the fair market value of their property was, after the commencement of the B–52 jet aircraft flights in March 1957, reduced by the sum of $9,000, said reduction reflecting the value of the improvements on the property. Defendant contends that the effect on the fair market value of plaintiffs' property by the commencement of such flights on or about March 26, 1957, was to cause a reduction therein in the amount of only $3,700 and that its liability, if any, should be restricted to such amount.

■ However, the commissioner has found, and we adopt the finding, that:

" * * * Taking into consideration the entire record, including the

1. Under defendant's theory, if the Government is granted an easement permitting an officer or agent of the Government to walk over a person's land, and later the Government marches an army over said land thereby causing damage far greater, no cause of action could be maintained because the action accrued when the walking easement was granted. It seems clear that such accrual would be manifestly unjust and unfair and consequently could not be the law. Cf. Klein v. United States, supra.

opinions of the real estate appraisers offered by the parties, the value of comparable properties, especially wheat farm operations, the reduction in value already caused prior to March 26, 1957 by the B–36 flights, the further reduction in value caused (for which plaintiffs have already been paid) by the taking of the clearance easement referred to in finding 12, and such residual value as the improvements still would have incident to a nonresidential agricultural operation, as described in finding 19, it is concluded that the effect on the fair market value of plaintiffs' property by the flights of the B–52 jet bombers was to reduce such value by the sum of $6,000 [finding 20.]"

Therefore, we conclude that plaintiffs are entitled to recover, and judgment will be entered against the defendant in the amount of $6,000, together with interest at the rate of four percent from March 26, 1957, the date of taking, as a part of just compensation.

 Defendant contends that the award of just compensation should be conditioned upon the execution and delivery to the defendant of a deed from the plaintiffs precisely describing and conveying the interests taken by the United States. This action has been taken by this court on other occasions,[2] but in the instant case the plaintiffs are no longer the owners of the real estate. Plaintiffs' grantee is not a party to this suit and consequently no order could be made which would directly bind said grantee. However, plaintiffs' grantee must certainly have been aware of the flights and resultant taking by defendant and no doubt took title subject to any interest of the United States. For this reason we hold that defendant is vested with a perpetual easement of flight for the aircraft in use at the time of taking, March 26, 1957.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and DURFEE, Judge, concur.

WHITAKER, Judge (concurring).

I think the reason my brethren and I disagree in our view of this case lies in this:

The majority recognizes that the flights of the B–36's over plaintiffs' dwelling did interfere with plaintiffs' use and enjoyment of it. The court finds as a fact:

"* * * After November 1951 the value of the property was diminished (by an amount not shown by the record) by the low flights of B–36 bombers over it. The highest and best use of the property as wheat acreage, and its value therefor, remained the same, but its usefulness for residential purposes was reduced.

"In March 1957, before the commencement of flights by B–52 and KC–135 jet aircraft, the highest and best use of plaintiffs' premises was still for agricultural purposes with some residual value of the improvements thereon for residential purposes in connection with the operation of an owner-occupied farm."

If that is true, then there was a taking at that time of an easement of flight over plaintiffs' property at the lowest altitude at which these planes were accustomed to fly. This is the holding of the Supreme Court in Portsmouth Harbor Land & Hotel Co. v. United States, 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287, and in United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206. See also Highland Park, Inc. v. United States, 161 F.Supp. 597, 142 Ct.Cl. 269.

In the Causby case the Supreme Court, after having said that the United States conceded that if the flights over plaintiffs' property rendered it uninhabitable

2. Ferrell v. United States, 49 Ct.Cl. 222; Dick v. United States, Ct.Cl., 169 F.Supp.

491; Bacon v. United States, No. 333–58, Ct.Cl., 295 F.2d 936.

there would be a taking, said [328 U.S. 256, 66 S.Ct. 1066]:

"There is no material difference between the supposed case and the present one, except that here enjoyment and use of the land are not completely destroyed. But that does not seem to us to be controlling. The path of glide for airplanes might reduce a valuable factory site to grazing land, an orchard to a vegetable patch, a residential section to a wheat field. Some value would remain. But the use of the airspace immediately above the land would limit the utility of the land and cause a diminution in its value. That was the philosophy of Portsmouth Harbor Land & Hotel Co. v. United States, 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287. In that case the petition alleged that the United States erected a fort on nearby land, established a battery and a fire control station there, and fired guns over petitioner's land. The Court, speaking through Mr. Justice Holmes, reversed the Court of Claims, which dismissed the petition on a demurrer, holding that 'the specific facts set forth would warrant a finding that a servitude has been imposed.' 260 U.S. at page 330, 43 S.Ct. at page 137, 67 L.Ed. 287. And see Delta Air Corp. v. Kersey, 193 Ga. 862, 20 S.E.2d 245, 140 A. L.R. 1352. Cf. United States v. 357.25 Acres of Land, D.C., 55 F. Supp. 461."

The majority says this was a partial taking and that another taking took place when the all-jet B–52 planes began flying over the property in 1957. This is the point of departure between them and me.

When defendant began flying planes over plaintiffs' dwelling at an altitude and of a character that interfered with plaintiffs' use and enjoyment of it to an extent sufficient to diminish the value thereof, it thereby took an easement of flight, not only for planes of the character it was then using, but for any character of planes it might use in the future. See Wilson v. United States, Ct.Cl. No. 114–57, decided November 2, 1960.

Here there was no grant of an easement; defendant took an easement. It asserted the right under its power of eminent domain to invade plaintiffs' property to an extent sufficient to interfere with plaintiffs' use and enjoyment of it. But is it to be supposed that the assertion of this right was limited to the use of the B–36's which defendant was then using? Considering the constant advance in aviation, and in particular the constant improvement in military planes, is it not to be presumed that defendant then asserted the right to fly planes of any character over plaintiffs' property? If so, defendant then took an easement of flight for planes of any sort. When easements of flight have been taken heretofore, this court has never confined the easement to a particular type of plane, but has said that it covered planes of all types. See Finding 1 in Causby v. United States, 75 F.Supp. 262, 109 Ct.Cl. 768, 769 (on remand from the Supreme Court); Wilson v. United States, supra. Cf. Matson v. United States, 171 F.Supp. 283, 145 Ct.Cl. 225, No. 268–56, decided March 4, 1959.

It is true that there was then no positive evidence of such an intention, but, unless we indulge the presumption suggested, plaintiffs would be required to bring a suit as soon as the first interference occurred; then, when it increased, to bring another one, and so on until their property was completely destroyed. It seems to me that plaintiffs were entitled to wait in order to ascertain to what extent defendant's activities would interfere with their use and enjoyment of their property and then to sue for the entire reduction in value. United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789; Klein v. United States, Ct.Cl. No. 157–58, decided January 18, 1961, cert. denied 366 U.S. 936, 81 S.Ct. 1661, 6 L.Ed.2d 847.

Flights of planes that do not depreciate the value of one's property are not

compensable; hence, in Highland Park, Inc., v. United States, supra, we held a taking did not occur until the advent of the jets, which first depreciated its value; but here a taking had occurred before the all-jets arrived. The question here is the extent of that taking. I think plaintiffs had a right to wait to ascertain the extent, and then to bring their suit.

The flights of the B–36's and the flights of the B–52's were parts of a continuous course of conduct, for which plaintiffs are required to bring but one action.

However, plaintiffs do not ask compensation for the decrease in value caused by the B–36's, and, hence, I concur in the result reached by the majority.