Alvin O. West, Washington, D. C., for plaintiffs. B. C. Gardner, Jr., and Asa D. Kelley, Jr., Albany, Ga., on the briefs.

Herbert Pittle, Washington, D. C., with whom was Asst. Atty. Gen., Ramsey Clark, for defendant.

Kate Mock BACON (1), Bertha Mock Davis, Stella Mock Hunter, Kate Mock Bacon, and Alma Mock Hilsman, A Partnership Doing Business As Baker Heights (2), Stella Mock Hunter (3), J. W. Mock (4), J. W. Mock, Jr. (5), L. Eugene Mock, Sr. (6), L. Eugene Mock, II (7)

v.

UNITED STATES.

No. 333–58.

United States Court of Claims.

Nov. 1, 1961.

LARAMORE, Judge, delivered the opinion of the court.

The plaintiffs, owners of several tracts of land and improvements near the City of Albany, Georgia, sue for the value of an interest in said properties, allegedly taken by defendant by operating aircraft at Turner Air Force Base.

The real estate owned by plaintiffs was acquired either by purchase or inheritance at various times during the period 1923 to 1946 and is located just to the southwest of Turner Air Force Base.

Turner Air Force Base was activated by defendant on May 15, 1941, and was used throughout World War II for preflight training of aviation cadets and for training pilots for propeller-driven fighter and bomber aircraft. Until the cessation of hostilities, many different types of aircraft were used for training, including the propeller-driven B–25 medium bomber. During this period of time, B–25s made numerous flights at elevations as low as approximately 250 to 300 feet

over all the plaintiffs' properties, and on occasion such flights would be as low as approximately 100 to 150 feet over such properties. These planes, including the B-25 bombers used at the Base commencing in 1943, were noisy but were not so obnoxious as to be intolerable to plaintiffs.

On September 1, 1947, Turner Field was reactivated and transferred to the Tactical Air Command. In January 1948 the Field was redesignated Turner Air Force Base. Shortly after December 1, 1948, the fighter group operating from said Base was equipped with P-51 single engine, propeller-driven aircraft. In September 1948, some F-84C single engine, jet-propelled fighter planes were assigned to the Base.

Thereafter, different types of jet-propelled aircraft were assigned to the Base as they were developed. An increasing number of flights occurred in the years following, when jet aircraft commenced regular low flights over the properties.

It is the government's position that in the present case the plaintiffs' cause of action accrued in 1941, and certainly no later than 1948 or early 1949, when F-84 aircraft commenced full operations and started to make low and frequent flights over the premises, and this suit is barred by the statute of limitations, 28 U.S.C. § 2501.

The basic issue in this case, therefore, is essentially factual; i. e., when did the flights over plaintiffs' land amount to a taking by the defendant under the standard established by the Supreme Court in United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206.

This standard is that when flights over private lands constitute a direct and immediate interference with the enjoyment and use of the land by plaintiffs, there is a compensable taking under the Fifth Amendment.

Turning then to the facts of this case— it is quite evident that while there was some noise and inconvenience to plaintiffs from the time the flights commenced in 1941, it was not so obnoxious as to be intolerable to plaintiffs. Even upon reactivation of the Field in 1947, while the use of P-51s and later the single engine jet T-33s, F-80s, F-84Cs, F-84Es, and F-84Gs, created greater noise and were still more annoying than the planes previously used, the noise was still not intolerable to plaintiffs and their families.

From 1947 to approximately the summer of 1955, the effect of the flights was not such as to interfere substantially with the use of plaintiffs' properties as residential properties. However, the value of plaintiffs' properties was diminished by the increased noise and nuisance of the newer and more powerful types of jet planes introduced at the Base in the latter part of 1954 (principally the F-84Fs, with their terrifyingly loud, shrill noise), the increased flight activity at the Base commencing in 1955, and the consequent more frequent low flights over the properties, and finally and more dramatically, by a later described plane crash in August 1955, following which the usual forms of VA, FHA, and conventional financing for residential properties became unobtainable with respect to transactions in properties located in the approach zones, as were plaintiffs' properties. After August 1955, the marketability of such properties was seriously affected adversely by such financing restrictions. The introduction of the very large and even noisier eight engine B-52 jet bombers in 1959 and their frequent low flights plaintiffs' properties made such properties even less desirable as residential property and further reduced their market value.

There have been some differences in the flight pattern since runway No. 2 was opened in 1959, as the planes now come more directly over the houses in the Baker Heights subdivision and at lower altitudes. Baker Heights subdivision was laid out by plaintiffs Bertha Mock Davis, Stella Mock Hunter, Kate Mock Bacon, and Alma Mock Hilsman prior to the arrival of the F-84Fs in 1954. Generally, however, there has been no substantial difference in the pattern of flights over

plaintiffs' properties since the commencement of operations on enlarged runway No. 2 in 1959.

It was not until late in 1954 or early in 1955 when the F–84F, a swept-wing aircraft, was introduced to the Base that the noise became intolerable to plaintiffs. The noise created by the F–84F was different from the previous aircraft used in that it emitted a shrill, high-pitched, intense noise, terrifying to plaintiffs. Furthermore, a number of KB–29s were brought to the Base at the same time and they also made a very loud, and what was to plaintiffs, terrifying noise as they flew over plaintiffs' properties. The F–100s, a single engine jet which replaced the F–84s, were just as noisy, particularly when the afterburner was turned on. The eight engine B–52 jet bombers in use at the Base since July 1959 are the noisiest of all the planes which have operated from the Base.

The B–52s make an exceptionally loud, screaming, roaring noise. The noise of the F–100 with afterburner operating is also extremely intense at the altitudes at which it flies over the properties herein involved. The houses tremble and the windows rattle. Sleep is not only disturbed by the noise, but at night the whole area is brightly illuminated by the landing lights of the incoming planes. In late 1958, when the mission of Turner Air Force Base was changed from that of a fighter command to that of a bomber command and the B–52 eight engine bombers were subsequently assigned to the Base, plaintiffs justifiably became more fearful of living in the approach zones of the runways.

Added to the noise created by the planes used after late 1954 and early 1955, on August 12, 1955, an F–84F crashed within 200 to 250 feet of the house of plaintiff L. Eugene Mock II, and in close proximity of the homes of the other plaintiffs. The plane sheared off the top of the house, setting the house on fire, and completely demolished a 2-story garage apartment killing two people. This plane crash coincided approximately with the increase in noise because of the newer planes being introduced at the Base.

Two property owners in the subdivision have been trying without success to sell their property. Several owners in this subdivision have sold their houses but were not able to realize anything on their equities.

Thus it is clear that the use by plaintiffs of their properties was not seriously interfered with until at least late in 1954 and that plaintiffs' cause of action accrued at that time. The petition in this case was filed July 25, 1958, and consequently is not barred by the statute of limitations, supra. See Davis v. United States, Ct.Cl., 295 F.2d 931, No. 99–59.

The parties have stipulated and agreed that in the event the court should find that the action of the defendant in operating aircraft at Turner Air Force Base constituted the taking of an interest in plaintiffs' properties, or any of them, then the fair market value as of the date of such taking of the interests so taken, as to each parcel, shall be as follows:

1. Kate Mock Bacon .................. $ 5,000
2. Bertha Mock Davis, Stella Mock Hunter, Kate Mock Bacon and Alma Mock Hilsman, a partnership doing busines as Baker Heights:

| | |
|---|---|
| As to Tract A......... | $ 2,500 |
| As to Tract B.......... | 750 |
| As to Tract C.......... | 22,250 |
| As to Tract D......... | 2,500 |
| Total for Baker Heights ....... | 28,000 |

3. Stella Mock Hunter .............. 2,000
4. J. W. Mock
   As to Tract A.......... $ 1,500
   As to Tract B......... 8,000
   As to Tract C.......... 750
   As to Tract D.......... 2,750

   Total for J. W. Mock ......... 13,000
5. J. W. Mock, Jr. .................. 4,000
6. L. Eugene Mock, Sr. .............. 3,500
7. L. Eugene Mock, II .............. 4,500

It is concluded, therefore, that the flights of F–84Fs, KB–29s and B–52s so substantially interfered with plaintiffs' use and enjoyment of their properties as to constitute a taking under the Fifth Amendment to the Constitution and plaintiffs therefore are entitled to recover, and judgment will be entered against defendant in the above amounts, together with interest thereon, as a part of just compensation, at the rate of four percent per annum from August 12, 1955 to date of payment.[1]

Plaintiffs will execute and deliver to defendant deeds describing and conveying the interests so taken, in conformity with this opinion.

It is so ordered.

FAHY, Circuit Judge, sitting by designation, JONES, Chief Judge, and DURFEE and WHITAKER, Judges, concur.

---

1. August 12, 1955, is the date of the crash which took two lives. The findings show that said crash coincided approximately with the increase in noise. Therefore, for

our purpose we adopt the date of August 12, 1955 as the date of taking and interest, as part of just compensation, will run from said date.