Otis and Bessie POWELL

v.

The UNITED STATES.

Cleveland and Connie JOHNS

v.

The UNITED STATES.

Alvin Marvin and Barbara SAPP

v.

The UNITED STATES.

Andrew J. and Carrie M. TURNER

v.

The UNITED STATES.

William A. WELBORN

v.

The UNITED STATES.

Jimmy F. WOODARD

v.

The UNITED STATES.

Nos. 679–80L, 690–80L, 691–80L, 692–80L, 693–80L and 694–80L.

United States Claims Court.

Feb. 23, 1983.

Bruce M. Hofstadter, Macon, Ga., for plaintiffs. Westmoreland, Patterson & Moseley, Macon, Ga., of counsel.

Pauline H. Milius, Washington, D.C., with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D.C., for defendant. Major William J. Denton, U.S. Air Force, General Litigation Div., Washington, D.C., of counsel.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### OPINION

WHITE, Senior Judge.

The plaintiffs in these six consolidated cases contend that the Government has taken, without just compensation, avigation easements in the airspace over the plaintiffs' lands. The taking claims are based on flights of defendant's military aircraft originating from Robins Air Force Base, Georgia (Robins). The plaintiffs' lands are located near Robins.

The plaintiffs originally filed their actions in the United States District Court for the Middle District of Georgia in 1980. The complaints alleged that the defendant's aircraft operations at Robins had resulted in personal injury and property damage. The district court held that all of the property damage claims asserted by the plaintiffs were in the nature of inverse condemnation claims; and, as the plaintiffs' taking claims each exceeded $10,000 in amount, the tak-

ing claims were transferred to this court's predecessor, the U.S. Court of Claims, pursuant to 28 U.S.C. § 1406(c) (1976). The district court retained jurisdiction over all of the personal injury claims asserted by the plaintiffs.[1]

The defendant has moved for summary judgment against all the plaintiffs. The plaintiffs oppose the motion, contending that there are genuine issues of material fact in dispute. The court concludes, however, that there are no genuine issues of material fact in dispute, that the defendant is entitled to judgment as a matter of law, and, therefore, that the motion for summary judgment should be granted and the plaintiffs' complaints (formerly denominated petitions in the Court of Claims) should be dismissed.

Some of the facts in this action are expressly agreed to by the parties. The court finds that additional facts material to the case—which will be described in detail later in the opinion—are conclusively established by the affidavits submitted by the defendant[2] and not refuted by the plaintiffs. The plaintiffs have also submitted affidavits and other materials in support of their opposition to the defendant's motion,[3] but the court finds that the plaintiffs' submissions fail to establish a dispute as to any material issue of fact.

The plaintiffs' properties are located near each other and beyond the northwest end of a northwest-southeast runway at Robins, this being the only runway at the base. The runway is designated as "runway 32" when traffic proceeds in a northwesterly direction, and as "runway 14" when operations are in a southeasterly direction. Wind speed and direction determine which runway to use. Runway 32 is used for between 85 and 95 percent of the flight operations at

Robins, while runway 14 is used for the remainder of the operations.

The plaintiffs' properties are located the following distances from the runway at Robins: Powell property, approximately 1¾ miles from the end of the northwest runway; Johns property, 7,400 feet from the end and 450 feet to the right of the northwest runway; Sapp property, 4,570 feet from the end and 2,370 feet to the right of the northwest runway; Turner property, 4,840 feet from the end and 2,180 feet to the right of the northwest runway; Welborn property, 7,400 feet from the end and 100 feet to the right of the northwest runway; and Woodard property, 7,880 feet from the end and 50 feet to the right of the northwest runway.

Numerous types of aircraft operate at Robins. The aircraft contributing the most to the total operations count (total arrivals and departures) at the base are the F–15, B–52, C–130, KC–135, L–188/L–382, and T–37/A–37. Except for the F–15, all of these aircraft have operated at Robins since 1960. The F–15 did not become operational until November 1976, when the F–15 Functional Flight Test Pattern Program was implemented.

The highest aircraft operations count at Robins since 1955 was in 1970 (115,373). Since 1970, the total operations count has declined significantly to 58.3 percent of the 1970 count.

It is an undisputed fact that the defendant's military aircraft fly over the plaintiffs' properties. The aircraft pass over the properties during an estimated 40 to 60 percent of the departures on runway 32. The defendant's aircraft also fly over the plaintiffs' properties during landings on runway 14. The aircraft that most frequently overfly the properties are the B–52,

---

1. On April 15, 1982, the district court granted summary judgment for the defendant on all of the personal injury claims.

2. Defendant has submitted two affidavits of Lieutenant Colonel Richard Salvatore, Chief of the Operations and Training Division of the 2853 Air Base Group, Robins Air Force Base, Georgia. Defendant has also submitted the affidavit of Lieutenant Colonel Alan H. Perry,

Chief of the Bio Environmental Engineering Services Division, USAF Hospital, Robins Air Force Base Hospital.

3. Plaintiffs have submitted their own affidavits, their answers to defendant's interrogatories, and defendant's answers to plaintiffs' interrogatories.

KC–135, C–130, L–188/L–382, and T–37/A–37.

Except for the F–15, which will be discussed later in the opinion, there has been no significant change since 1960 in the flight altitudes over the plaintiffs' properties of the defendant's aircraft operating at Robins. Although the materials submitted by the parties in connection with the pending motion for summary judgment indicate differences between the defendant and the plaintiffs concerning the minimum altitudes at which aircraft have overflown the plaintiffs' lands, it is not necessary to resolve such differences in order to dispose of the case.

### The Statute of Limitations Issue

■ The plaintiffs allege in their complaints that takings have resulted from the defendant's aircraft operations at Robins, dating from 1960. Specifically, the plaintiffs' complaints contain the following allegations:

> For a period of time from approximately January 1, 1960 to the present, the defendant United States of America, has operated aircraft in flights to and from the Base. The noise and vibration caused by said aircraft hurt human ears, caused unpleasant physical sensations, interrupted sleep at night, made conversation either in person or by telephone impossible, and drowned out radio broadcasts and the audio portion of television broadcasts in the plaintiffs' homes. Low altitude flights also created great fear in the plaintiffs and other persons living on some of their respective property of death or other serious personal injury as a result of accidents. * * *

The defendant contends that, except for the claims relating to the F–15 aircraft, the plaintiffs' actions are barred by the 6-year statute of limitations (28 U.S.C. § 2501 (1976), as amended by section 139 of The Federal Courts Improvement Act of 1982 (Pub.L. No. 97–164, 96 Stat. 25, 42)). The court agrees.

It has been held that where the elements which constitute the taking of an avigation easement by the Government over a parcel of land are shown to be present, the taking occurs when the Government begins to operate its aircraft regularly and frequently over the land with the intention of continuing such flights indefinitely. *Lacey v. United States,* 219 Ct.Cl. 551, 559, 595 F.2d 614, 618 (1979); *see also, e.g., A.J. Hodges Industries, Inc. v. United States,* 174 Ct.Cl. 259, 265–66, 355 F.2d 592, 596 (1966); *Adaman Mutual Water Co. v. United States,* 143 Ct.Cl. 921, 924, 181 F.Supp. 658, 660 (1958). An affidavit submitted by the defendant establishes as a fact, which the plaintiffs have not disputed, that the number of flights per year at Robins peaked in 1970, and that the number has substantially decreased in recent years. Moreover, there has been no significant change in the mix of major aircraft operating at Robins since 1960 (except for the introduction of the F–15 aircraft), nor has there been any significant change since 1960 in the flight altitudes over the plaintiffs' lands of the aircraft (other than the F–15) operating at Robins.

Therefore, if any taking has occurred (other than as a result of the F–15 operations), it occurred no later than 1970. As the plaintiffs' complaints were not filed until 1980, the taking claims (other than those based on F–15 flights) are barred by the 6-year statute of limitations.

### The F–15 Flights

Apparently in recognition of the statute of limitations problem, the plaintiffs argue that the implementation of the F–15 Flight Test Pattern Program in November 1976 resulted in a "second taking" of avigation easements over the plaintiffs' properties. The plaintiffs' contention is that the taking has proceeded gradually, and that only beginning in 1978, when the F–15 flights increased, were the consequences of the taking ascertainable.

The law on the taking of avigation easements by the Government over private lands has proceeded from the Supreme Court's landmark decision in *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90

L.Ed. 1206 (1946). In *Causby,* the Court stated that although the airspace is a public highway and part of the public domain, "if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere" (*id.* at 264, 66 S.Ct. at 1067). *Causby* established the rule that flights by government-owned aircraft over private land do not constitute a taking unless they are "so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land" (*id.* at 266, 66 S.Ct. at 1068).

The cases in which this court's predecessor, the Court of Claims, applied the *Causby* rule are legion. It is well established by the cases, for example, that although the Government, at an earlier time, has taken an avigation easement in the airspace above a tract of land, a "second taking" may occur if the Government later begins to overfly the land with noisier aircraft (*e.g., Avery v. United States,* 165 Ct.Cl. 357, 362, 330 F.2d 640, 643 (1964); *Davis v. United States,* 155 Ct.Cl. 418, 420–22, 295 F.2d 931, 932–34 (1961)) or at lower altitudes (*e.g., A.J. Hodges Industries, Inc. v. United States, supra,* 174 Ct.Cl. at 266–67, 355 F.2d at 597).

In the present cases, however, the undisputed facts establish that the F–15 flights over the plaintiffs' properties have not resulted in a "second taking."

The F–15 aircraft never pass over the plaintiffs' properties on departure, although approximately 95 percent of the F–15 flights depart from runway 32 in a northwesterly direction. The aircraft is airborne approximately 1,500 feet down the runway and, after it has travelled 6,000 feet, or halfway down the 12,000-foot runway and more than a mile from any of the plaintiffs' properties, the aircraft rotates to a vertical position and accelerates straight up to an altitude of 15,000 feet. The aircraft then rotates again and proceeds towards the southeast, the direction from which it departed.

All the F–15's proceed to a sparsely populated area 20 miles south of Robins, for supersonic speed runs in a corridor approximately 87 miles long. The speed runs occur only in the corridor, and usually at altitudes between 40,000 and 45,000 feet above ground level. After the speed runs have been completed, the F–15's return to Robins. Approximately 95 percent of the F–15 landings are from the southeast and on runway 32, and, consequently, the aircraft do not overfly the plaintiffs' properties. Only during the remaining approximately 5 percent of the landings do the F–15's fly over the plaintiffs' properties and use runway 14.

The number of F–15 flights (takeoffs and landings) at Robins has increased since 1978. During the October-December period in 1981, there were 22 F–15 sorties (each sortie consists of a takeoff and a landing) at Robins; and during the 12 months that ended in June 1982, there were 109 F–15 sorties there. The F–15's did not pass over the plaintiffs' lands in connection with any of the takeoffs, and passed over the plaintiffs' lands in connection with only about 5 percent of the landings.

 Materials submitted by the plaintiffs indicate, by implication, that the F–15's, as they fly over the plaintiffs' lands, do so at an altitude of less than 500 feet above ground level. On the other hand, it appears from material submitted by the defendant that the F–15's, as they fly over the plaintiffs' lands, do so at an altitude of 500 feet or higher above ground level. Absent peculiar circumstances, not shown to be present here, it is the general rule that 500 feet above ground level in uncongested areas is the dividing line between the upper airspace in which aircraft have the right of free passage, and the lower airspace in which the owner of the subjacent land is protected against the intrusion of aircraft. *Aaron v. United States,* 160 Ct.Cl. 295, 300, 311 F.2d 798, 801 (1963); *cf. Branning v. United States,* 228 Ct.Cl. ——, ——, ——, 654 F.2d 88, 90, 101–2 (1981). However, the differences between the parties concerning the minimum altitude at which F–15's occasionally pass through the airspace above the plaintiffs' lands do not raise a genuine factual issue material to the disposition of the litigation. .

The elements involved in the taking of an avigation easement by the Government consist of flights by government-owned aircraft through the airspace above a tract of land (1) which are regular and frequent, (2) which are at impermissibly low altitudes, and (3) which interfere substantially with the use and enjoyment of the land. *See, e.g., United States v. Causby, supra,* 328 U.S. at 266, 66 S.Ct. at 1068; *Davis v. United States, supra,* 155 Ct.Cl. at 420, 295 F.2d at 932; *Mid-States Fats and Oils Corp. v. United States,* 159 Ct.Cl. 301, 309 (1962); *A.J. Hodges Industries, Inc. v. United States, supra,* 174 Ct.Cl. at 262, 355 F.2d at 594; *Speir v. United States,* 202 Ct.Cl. 1020, 1024, 485 F.2d 643, 646 (1973). Elements (1) and (3), at least, are lacking with respect to the F–15 flights above the plaintiffs' lands.

The materials before the court establish that the F–15's pass over the plaintiffs' properties only during approximately 5 percent of the aircraft's landings at Robins, or less than once per month on the average. Moreover, the noise levels of the F–15 are lower than the noise levels of other major aircraft that have operated at Robins since 1960.

The necessary conclusion is that the F–15 flights over the plaintiffs' lands have not been sufficiently frequent or sufficiently noisy to cause substantial interference with the use and enjoyment of the plaintiffs' properties. Consequently, such flights have not resulted in a "second taking," without regard to the altitude of the flights.

### Sonic Booms

Finally, to the extent that their claims of takings are based on the sonic booms created by the F–15 flights, the plaintiffs still fail. The uncontradicted data before the court establish that the sonic booms occur only when the F–15's are in a speed-run corridor approximately 20 miles south of Robins and at an altitude of between 40,000 and 45,000 feet above ground level. The mere invasion of sound and shock waves from government-owned aircraft, without physical intrusion by the aircraft into protected airspace, does not constitute the taking of an avigation easement. *Batten v. United States,* 306 F.2d 580, 583 (10th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 506, 9 L.Ed.2d 502 (1963); *Avery v. United States, supra,* 165 Ct.Cl. at 362–65, 330 F.2d at 643–45.

Consequently, the sonic booms in these cases have not resulted in the taking of avigation easements in the airspace over the plaintiffs' properties.

### Conclusion

For the reasons stated in the opinion, it is concluded that there is no genuine issue as to any material fact in these cases, and that the defendant is entitled to a judgment as a matter of law. Accordingly, the defendant's motion for summary judgment against all the plaintiffs is granted, and the complaints will be dismissed.

It is so ordered.