**David M. BROWN and Carolyn W. Brown, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 92–102L.**

United States Court of Federal Claims.

Nov. 4, 1993.

Samuel Downing McDaniel, Austin, TX, attorney of record, for plaintiffs. Corbin Lee Snow, of counsel.

Andrew M. Eschen, Washington, DC, with whom was Acting Asst. Atty. Gen. Myles Flint, for defendant. Richard Sarver, AF JAG, of counsel.

## MEMORANDUM OF DECISION

HARKINS, Senior Judge:

At the close of argument, a bench ruling was made. The reasons for the ruling were stated upon the record.

Plaintiffs' claim is for compensation for a Fifth Amendment taking of property on a recreational ranch by reason of "touch and go" operations at an Air Force auxiliary airfield (Wizard), which is located approximately 25 miles southeast of Laughlin Air Force Base, Del Rio, Texas. Wizard was designed specifically for "touch and go" training by pilots flying T–37 jet aircraft, a small two-seat, two-engine training jet; construction was completed and operations began in January 1991. There is no dispute that over-flights are frequent and low (below 500′ AGL) in connection with takeoff and landing training at Wizard and that it is being done on a permanent basis. Plaintiffs' property totals 6,858 acres. The low level overflights are directly over a portion of plaintiffs' land that contains at least 100 acres. Touch and go maneuvers at Wizard are conducted primarily on weekdays during daylight hours; all overflights, other than touch and go training, of plaintiffs' ranch are at altitudes above 500′ AGL. The highest and best use of plaintiffs' land is considered to be "recreational ranching." Plaintiffs do not regularly live at the ranch, but visit it up to 3 times a month. The land is used primarily to raise cattle and for recreational hunting by individuals who pay a fee to plaintiffs.

Plaintiffs claim there has been a substantial intrusion of the airspace immediately above the surface of their property so as to constitute a taking of their interest and that the gravity of the intrusion is measured by the effect on the market value of the property. Plaintiffs' claim falls within the avigation easement concept formulated by the Supreme Court in the landmark case of *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). The *Causby* case established the rule that flights by Government owned aircraft are a taking under the Fifth Amendment of an easement of the overhead airspace if such flights are so low and so frequent as to be a direct and immediate interference with the use and enjoyment of the land. *Lacey v. United States*, 595 F.2d 614, 615, 219 Ct.Cl. 551 (1979).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). Disposition of a taking claim by summary judgment procedures is infrequent.

The question of whether a taking has occurred is fact-intensive and a complete record is required, normally by means of a trial. The factual nature of taking cases argues against precipitous grants of summary judgment. *Yuba Goldfields, Inc. v.*

*United States*, 723 F.2d 884, 887 (Fed.Cir. 1983). Summary judgment is an integral part of the rules, however, and in an appropriate case is not a disfavored procedural short cut. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed.Cir. 1987). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The summary judgment procedure serves judicial economy, and saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626 (Fed.Cir.1984); *United States Steel Corp. v. Vasco Metals Corp.*, 394 F.2d 1009, 1011 (C.C.P.A.1968).

The fact that there are cross-motions for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other. Summary judgment is properly granted only when there is no genuine issue of material fact. Each party's motion must be evaluated on its own merits and care must be taken to draw all reasonable inferences against the party whose motion is under consideration. "The party against which summary judgment is granted is not estopped by the filing of its own motion for summary judgment from asserting on review that there are genuine issues of material fact which prevent entry of judgment as matter of law against it." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987). A material fact is one which will make a difference in the result of a case. *See Curtis v. United States*, 168 F.Supp. 213, 216, 144 Ct.Cl. 194 (1958), *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959). The substantive law identifies the facts that are material. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Doubts concerning factual issues are to be resolved in favor of the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962).

The issue is whether the invasions of plaintiffs' airspace amount to a Fifth Amendment taking. The facts material to a taking of plaintiffs' property, involve the showing that (1) there were frequent and low flights by Air Force planes over plaintiffs' property, and (2) such overflights resulted in a substantial interference in plaintiffs' use and enjoyment of their property. Examination of the parties' respective proposed findings of uncontroverted fact and statements of genuine issues shows that although many proposed findings are disputed, such disputes involve matters not material, or are legal conclusions, or are not factual. There is no genuine issue as to any fact that is material to the showing of a taking of plaintiff's property. On the basis of facts established in the motion papers, and in argument by counsel, disposition by summary judgment procedures is appropriate.

Plaintiffs' responses to defendant's requests for admission and defendant's interrogatories during discovery establish that plaintiffs continue to have use of their land for raising cattle and for hunting. The facts show that the ranch is simply less enjoyable than it was, or is less desirable than it was before the Air Force commenced operations at Wizard. The motion papers do not show circumstances that constitute substantial interference with the use and enjoyment of plaintiffs' land.

An extensive body of case law regarding overflights provides guidance as to what type of interference is necessary. Typically, in avigation easement cases, plaintiffs alleging a taking due to overflights show physical injury to themselves, their land, or their property. In *Causby*, for example, the defendant's overflights caused the plaintiff's chickens to hurl themselves into the walls, resulting in the destruction of plaintiff's chicken business. In *Griggs v. Allegheny County*, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d

585 (1962), overflights caused windows to rattle and plaster to fall from the walls and ceilings. In addition, it was admitted that plaintiffs' house would be crashed into, in the event one of the planes had engine failure. *Id.* at 87, 82 S.Ct. at 532. In *Lacey,* the overflights greatly hindered plaintiff's use of the telephone and television, made face-to-face conversations difficult, and interfered with ranch operations. *Lacey v. United States,* 595 F.2d at 618.

Similarly, in *A.J. Hodges Indus. v. United States,* 355 F.2d 592, 174 Ct.Cl. 259 (1966), the defendant's overflights caused stampeding of plaintiff's cattle, made it impossible to hold conversations during overflights, and resulted in stoppage of work due to the noise. *Id.* 355 F.2d at 601. Finally, in *Speir v. United States,* 485 F.2d 643, 202 Ct.Cl. 1020 (1973), overflights of government helicopters interfered with both dove and quail hunting on the plaintiff's land by causing the animals to flee the helicopter's noise. *Id.* 485 F.2d at 647. *See also Highland Park v. United States,* 161 F.Supp. 597, 599, 142 Ct.Cl. 269 (1958) ("[A]ll conversation had to cease, radio and television reception was disrupted, the windows in the houses shook, dishes rattled on the shelves, sleep was disrupted, and the noise was so great as to be painful to the ears of some of the residents."); *Bacon v. United States,* 295 F.2d 936, 938, 155 Ct.Cl. 441 (1961) (government aircraft "emitted a shrill, high-pitched, intense noise," which terrified plaintiffs).

■ Plaintiffs' contention that the invasion of airspace results in an anticipated substantial adverse impact on market values is not adequate to show that the overflights in fact had a substantial direct and immediate interference with the subjacent property.

In *Nunnally v. United States,* 239 F.2d 521 (4th Cir.1956), notwithstanding evidence of direct overflights, and a finding that the value of the property had diminished, the court refused to find a taking:

> If it should be held that the facts in the present case constitute a taking, any reduction in the value of property attributable to a federal activity might be urged as a valid claim against the United States. The distinction between a "damage" and a

"taking", so carefully preserved by the courts would be obliterated.... [T]here has not yet been a taking of the plaintiffs' property, or of any interest therein, within the meaning of the Fifth Amendment.

*Id.* at 524.

■ It is clear that the courts will decline to find a compensable taking in the absence of proof that there has been a substantial and direct interference with the actual use of the surface; in such circumstances the superadjacent airspace may be used with impunity—even when the overflights are at less than 500' AGL. *Highland Park, Inc. v. United States,* 161 F.Supp. 597, 598, 600, 142 Ct.Cl. 269 (1958); *Bodine v. United States,* 538 F.2d 348, 210 Ct.Cl. 687, 688 (1976) ("Since there is no adverse effect on the land, plaintiff has not suffered a compensable taking.").

■ Plaintiffs assert that FAA regulations have a bearing upon and support their claim that their land has been taken. Plaintiffs cite 14 C.F.R. § 77.13 in support of this assertion. In actuality, plaintiffs' argument goes not to whether overflights have caused a physical taking of their land, but to whether a regulatory taking has occurred.

Plaintiffs point to 14 C.F.R. § 77.13 as prohibiting construction of objects above a 100–1 slope, which would be at 11.3' AGL at the Brown–Newman border and 31.3' AGL at the Brown–Plaza border. This, plaintiffs argue, is an invasion of their domain and thus a taking. However, 14 C.F.R. § 77.13 requires only that notice be given to the Administrator of the Federal Aviation Administration where construction will be above the indicated elevations. Nothing in Part 77 of the Regulations gives the Administrator any authority to prohibit construction of those objects deemed to be a "hazard."

■ Additionally, plaintiffs assert that a part of their property is within the "clear zone" under 14 C.F.R. § 77.28. A "clear zone" is an area the same width as the runway, and 1,000' long. Here, the "clear zone" would be what defendant calls the "overrun," none of which is within the plaintiffs' property. Even if the "clear zone" were within plaintiffs' property, Subpart C of Part

28

77 simply sets out obstruction standards. It is not enforceable by the FAA. *See Aircraft Owners & Pilots Ass'n v. Federal Aviation Administration*, 600 F.2d 965, 966–67 (D.C.Cir.1979); *Flowers Mill Assocs. v. United States*, 23 Cl.Ct. 182 (1991).

■ Land has value not in its mere ownership but in its use. These particular plaintiffs value its ownership because of its "remoteness." If the decline, however in "remoteness" or "tranquility" were the criterion for determining whether there has been a taking, there would be no end to Government liability; the Government would be liable to anyone living near or adjacent to a new highway, airport, or any other public facility which one may find noisy or otherwise objectionable. The case law clearly recognizes that those "effects" are not the standard for determining whether there has been a taking. *See e.g. East Haven v. Eastern Airlines*, 331 F.Supp. 16, 33 (D.Conn.1971) (no liability to property owners in the vicinity of airport for noise, soot, disturbance from aircraft; liability only to those subjacent properties satisfying *Causby* analysis); *Batten v. United States*, 306 F.2d 580, 581–85 (1962).

■ There are well established rules governing when the Government may be liable for the taking, by constant low level overflights, of an individual's right to use the surface of the land and its immediate reaches. No case has been found where the Government has been held liable for a *taking* of that right when the landowner retains—and continues to exercise—the ability to use the surface in the same manner. In determining whether there has been a compensable taking the inquiry focuses on "the loss to the owner of the property and not the accretion to the Government...." *Aris Gloves, Inc. v. United States*, 420 F.2d 1386, 1391, 190 Ct. Cl. 367 (1970). Since plaintiffs concede that there has been no present, direct and material interference with their ability to use the surface of the land, there has been no such loss and there has been no taking for which plaintiffs are entitled to compensation.

On the basis of the motion papers, argument of counsel and the statements made at the close of argument, defendant's motion for summary judgment is ALLOWED. Plaintiffs' motion for partial summary judgment is DENIED. The Clerk is directed to dismiss the complaint. No costs.