David M. **BROWN** and Carolyn W. Brown, Plaintiffs–Appellants,

v.

The **UNITED STATES**, Defendant–Appellee.

94–5065.

United States Court of Appeals, Federal Circuit.

Jan. 17, 1996.

Samuel Downing McDaniel, Attorney, of Austin, Texas, argued for plaintiffs-appellants. With him on the brief was Corbin L. Snow, of San Antonio, Texas, of counsel.

Jacques B. Gelin, Attorney, Department of Justice, Environment & Nat. Resources Division, of Washington, D.C., argued for defendant-appellee. With him on the brief were Lois J. Schiffer, Acting Assistant Attorney General, David C. Shilton and Andrew M. Eschen, Attorneys. Also on the brief was Ronald Forcier, Air Force Legal Services Agency, Arlington, Virginia, of counsel.

Before MAYER, Circuit Judge, SMITH, Senior Circuit Judge, and PLAGER, Circuit Judge.

PLAGER, Circuit Judge.

This case involves the impact of noise from aircraft overflights, and arises under the takings clause of the Fifth Amendment.[1] In their complaint to the Court of Federal Claims, David and Carolyn Brown alleged that noise from low overflights by United States Air Force planes constituted a taking of their property, and that just compensation was due. The Government moved for summary judgment that, as a matter of law, the Browns could not recover. In addition to opposing the Government's motion for summary judgment, the Browns argued that undisputed evidence showed that the Government had taken their property and therefore the only issue was how much the property taken was worth. The Browns accordingly moved for partial summary judgment in their favor.

After hearing argument, the Court of Federal Claims granted the Government's motion for summary judgment and consequently denied the Brown's motion for partial summary judgment. *Brown v. United States,* 30

Fed.Cl. 23 (1993). The trial court concluded its memorandum of decision with the statement that "[t]he Clerk is directed to dismiss the complaint." The Judgment, filed November 8, 1993, orders that "the Complaint is dismissed." We assume that the trial court's intention was simply to enter judgment for the Government. We therefore treat the trial court's ruling as an entry of judgment for the Government rather than a dismissal, and review the trial court's ruling on both of the parties' cross-motions.

## BACKGROUND

The Browns own a 6,858 acre ranch near Del Rio, in West Texas, near the Mexican border. They use the ranch, on which they have built a second home, for their own recreation and for cattle ranching. Additionally, the Browns allow guests to hunt on their property, for a fee. According to the Browns, they intend to further improve their land for recreational use and ultimately sell it in a high-priced market for recreational properties.

The Air Force since January 1991 uses a small airfield, Wizard Auxiliary Airfield, near the Browns' ranch, to train its pilots. Flights out of Laughlin Air Force Base, about 25 miles to the northwest of Wizard, conduct "touch and go" exercises on the Wizard airstrip. In a touch and go exercise, a plane approaches the landing strip as if to land, touches the ground, and takes off again without coming to a stop. Such exercises require planes to fly very low, producing a great deal of noise on the ground. On take off from Wizard's airstrip, planes fly less than 500 feet above ground level (AGL) over at least 100 acres of the Brown's property.

Wizard was built on land purchased by the Government from a Mr. and Mrs. Newman. In addition to the fee title for the land on which the airstrip was built, the Air Force purchased from the Newmans an easement over the land immediately surrounding the airfield. The Browns' property abuts land over which the Air Force owns an easement.

---

**1.** "[N]or shall private property be taken for public use, without just compensation." U.S. CONST. amend. V.

In December of 1989, while Wizard was being built, the Air Force solicited the sale of an easement from the Browns. The offer was refused, but the Air Force never initiated condemnation proceedings.

On February 7, 1992, the Browns filed their complaint in the Court of Federal Claims, alleging a taking and seeking damages of $1,500,000. In due course, the Government moved for summary judgment, arguing that no genuine issue of material fact had been raised, and the Government was entitled to judgment as a matter of law.

The trial court agreed with the Government's analysis of the case. The court held that under *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (*Causby*), the Browns could not recover as a matter of law, because although the occurrence of frequent and low overflights was undisputed, the Browns had not shown substantial interference with their present enjoyment and use of the overflown surface property. Specifically, the trial court found:

> Plaintiffs continue to have use of their land for raising cattle and for hunting.... The motion papers do not show circumstances that constitute substantial interference with the use and enjoyment of plaintiffs' land.... Plaintiffs' contention that the invasion of airspace results in an anticipated substantial adverse impact on market values is not adequate to show that the overflights in fact had a substantial direct and immediate interference with the subjacent property.... [I]n the absence of proof that there has been a substantial and direct interference with the actual use of the surface ... the superadjacent airspace may be used with impunity—even when the overflights are at less than 500' AGL.... Land has value not in its mere ownership but in its use. [citations omitted].

*Brown v. United States*, 30 Fed.Cl. at 26–28.

The trial court granted the Government's summary judgment motion and denied the Browns' motion for partial summary judgment. The Browns have timely appealed to this court.

## DISCUSSION

### A.

Under established Fifth Amendment jurisprudence, takings claims are analyzed differently depending on whether they involve a physical taking or a regulatory taking. *See Hendler v. United States*, 952 F.2d 1364, 1371–74 (Fed.Cir.1991) (discussing relationship between regulatory and physical takings, and the differences in analysis). In *Causby*, the Supreme Court stated that frequent and low flights by airplanes over private land, that cause direct and immediate interference with the property owner's enjoyment and use of the land, are akin to physical takings. "We think that the landowner, as an incident to his ownership, has a claim to [superadjacent airspace at this low altitude] and that invasions of it are in the same category as invasions of the surface." *Causby*, 328 U.S. at 265, 66 S.Ct. at 1068 (footnote omitted). *See also Griggs v. County of Allegheny, Pennsylvania*, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962) (applying *Causby*); *Speir v. United States*, 485 F.2d 643, 202 Ct.Cl. 1020 (1973) (applying *Causby* to overflights by helicopters for limited period of time); *A.J. Hodges Indus., Inc. v. United States*, 355 F.2d 592, 174 Ct.Cl. 259 (1966) (applying *Causby* to increase in noise due to overflights by heavier aircraft).

In the *Causby* case, the Court considered three factors significant in determining whether noise and other effects from overflights interfered with the property owner's rights in such a way as to constitute a taking of an avigation easement and hence require compensation: (i) the planes flew directly over the claimant's land; (ii) the flights were low and frequent, and (iii) the flights directly and immediately interfered with the claimant's enjoyment and use of the land. *Causby*, 328 U.S. at 266, 66 S.Ct. at 1068. Our caselaw following *Causby* has added a gloss on the third factor, requiring that the interference with enjoyment and use be "substantial." *E.g., A.J. Hodges Indus., Inc. v. United States*, 355 F.2d 592, 595–96, 174 Ct.Cl. 259 (1966) (citing *Causby* and *Bacon v. United States*, 295 F.2d 936, 155 Ct.Cl. 441 (1961)); *Speir v. United States*, 485 F.2d 643, 646–47, 202 Ct.Cl. 1020 (1973).

The Government recognizes that, in the case of the Browns, the first two of the three factors considered in *Causby* are present. The Government argues, however, that the third factor is missing—the flights do not directly and substantially interfere with the Browns' enjoyment and use of their land. In *Causby*, the land was a chicken farm and residence. The overflights made the land uninhabitable for both the farm family and its livestock. In this case, the Browns' ranch was and is still being used for hunting and raising of cattle. The Browns concede that their receipts from hunting fees are no less than they were before Wizard was built, and that their cattle do not seem upset by the planes, unlike the chickens in *Causby*. Accordingly, the Government argues that the overflights do not directly and substantially interfere with the Browns' current use of their property, and thus under *Causby* no taking can have occurred.

In opposing the Government's motion, the Browns argue that whether or not Government activity works a taking ultimately depends on the extent of the economic harm suffered by the property owner. They argue that determining the extent of the harm caused by the Government's intrusion requires a factual inquiry into the change, if any, of the market value of the land. In the proceedings before the trial court, the Browns submitted affidavits from two expert witnesses, both of whom said that the resale value of the land for recreational purposes had been substantially diminished by the touch and go exercises at Wizard. The Browns maintain that this evidence was sufficient to create a genuine issue of material fact, and that as a matter of law the Government's motion for summary judgment should have been denied.

The Browns further maintain that because the Air Force was concededly conducting these low overflights over the Browns' land on a permanent basis,[2] the fact of the taking had been established. The only question that is at issue in the case, they say, is how much the property taken by the Government is worth. The Browns therefore contend that they were entitled to partial summary judgment that a taking had occurred.

#### B.

■ As a general proposition, if the Government for purposes of public use physically occupies, either by its own agents or by third parties, privately owned land over the owner's objections, liability is a foregone conclusion.[3] "[N]o matter how minute the intrusion, and no matter how weighty the public purpose behind it, we have required compensation." *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992). "When faced with a constitutional challenge to a permanent physical occupation of real property, this Court has invariably found a taking." *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 427, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1982) (discussing caselaw and academic commentary). "In this case, we hold that the 'right to exclude,' so universally held to be a fundamental element of the property right, falls within this category of interests that the Government cannot take without compensation." *Kaiser Aetna v. United States,* 444 U.S. 164, 179–80, 100 S.Ct. 383, 393, 62 L.Ed.2d 332 (1979) (footnote omitted). "As [*Loretto* ] demonstrates, the extent of occupation [i]s only relevant to *compensation,* not liability." *Hendler,* 952 F.2d at 1381 (citations omitted).

■ At common law, the owner of real property was considered to own from the center of the earth to the top of the sky.[4]

---

2. On the meaning of "permanent" in takings cases, as contrasted with "temporary," see *Hendler,* 952 F.2d at 1376–77. We understand the Browns' argument to be that the Government's use of Wizard is with the intention of continuing such flights indefinitely.

3. Law enforcement activity involving the seizure or incidental occupation of private property, as a consequence of a violation of law or regulation by the property owner, raises different consider-

ations. *See, e.g., Branch v. United States,* 69 F.3d 1571 (Fed.Cir.1995); *California Housing Sec., Inc. v. United States,* 959 F.2d 955 (Fed.Cir.), *cert. denied,* 506 U.S. 916, 113 S.Ct. 324, 121 L.Ed.2d 244 (1992).

4. "Cujus est solum ejus est usque ad coelum et ad inferos." Black's Law Dictionary 378 (6th ed. 1990); *see also* 1 Coke, Institutes, 19th Ed. 1832, ch. 1 § 1(4a).

With the advent of human flight, and now world-wide aviation, a high altitude intrusion into an owner's theoretical airspace that had no impact whatever on the surface property could not be actionable. Thus, unlike a government invasion of the surface land itself, an invasion of airspace above surface land does not *per se* constitute a taking. However, under *Causby* and its progeny, once the surface owner proves that low-level overflights result in direct, immediate, and substantial interference with the enjoyment and use of the property, the owner establishes a taking for which the Constitution mandates just compensation. The question in this case is whether the Browns have raised a genuine issue of material fact as to whether the overflights directly, immediately, and substantially interfere with the Browns' enjoyment and use of that part of their property over which the flights occur.

■ The trial court found, and the Government argues on appeal, that because the Browns have conceded that their current use of the affected property for cattle ranching and recreation, and their income from these activities, have not diminished, the Browns cannot have suffered a substantial interference with their enjoyment and use under *Causby*. According to the Government, *Causby* does not protect against decrease in market value when that decrease is not accompanied by diminishment of present, actual use of the property.

The Government's view—that "enjoyment and use" means that interference with present use is the *sine qua non* for a successful takings claim based on noise from overflights—deprives the term "enjoyment" of its classical meaning in property law, and makes the phrase "enjoyment and use" redundant. Enjoyment of property at common law contemplated the entire bundle of rights and privileges that attached to the ownership of land. The legal meaning of "enjoy" is "to have, possess, and use with satisfaction; to occupy or have benefit of." BLACK'S LAW DICTIONARY 529 (6th ed. 1990). Owners of fee simple estates, like the Browns, clearly enjoy not only the right to put their land to a particular present use, but also to hold the land for investment and appreciation, and to lease or convey the land to others, gratuitously or for profit. As recognized in *Causby*: "[I]t is obvious that if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere. Otherwise buildings could not be erected, trees could not be planted, and even fences could not be run.... The fact that he does not occupy it in a physical sense—by the erection of buildings and the like—is not material." 328 U.S. at 264, 66 S.Ct. at 1067. *See also Lacey v. United States*, 595 F.2d 614, 615, 219 Ct.Cl. 551 (1979) ("a landowner is protected against intrusions in the airspace so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it.").

The Government's argument that only present actual use is relevant to the takings analysis conflicts with the avigation easement caselaw, which recognizes that a taking may involve the impairment of future uses of land. *See Causby*, 328 U.S. at 262, 66 S.Ct. at 1066 (defining property owner's "beneficial ownership" of land as "owner's right to possess and exploit the land."). In *Mid–States Fats and Oils Corp. v. United States*, 159 Ct.Cl. 301, 1962 WL 9324 (1962), the Court of Claims found a taking by overflight when low, frequent and noisy overflights interfered with property that the owner was in the process of preparing for future use as a soybean processing plant. *See also Speir v. United States*, 485 F.2d 643, 648–49, 202 Ct.Cl. 1020 (1973) (considering, but rejecting on facts, owner's claim that government deprived it of right to develop property in future as subdivision).

■ An important element in a property owner's bundle of rights is the right to economically exploit his land—the right to sell the land for the best price available in the market, based not only on its current use but on potential other uses for which the market is presently prepared to pay. *Cf. Causby*, 328 U.S. at 261, 66 S.Ct. at 1066 (noting that market value may reflect "the use to which the land could readily be converted, as well as the existing use"). To the extent that frequent and low overflights, through noise, vibrations, fumes, and so forth, have directly

and substantially impaired the use of the Browns' property, for recreational ranching or other uses "to which the land could readily be converted," *Causby*, 328 U.S. at 261, 66 S.Ct. at 1066, there has been substantial interference with enjoyment of the property. Significant and immediate decline in market price for that part of the property, which decline is directly attributable to overflights, would strongly suggest such interference. *See Causby*, 328 U.S. at 262, 66 S.Ct. at 1066 ("the use of the airspace immediately above the land would limit the utility of the land and cause a diminution in its value"); *see also Branning v. United States*, 654 F.2d 88, 102, 228 Ct.Cl. 240 (1981) ("Since the subjacent property owner has suffered a diminution of the value of the property in this case, there has been a taking of an easement over and through the airspace superjacent the property of the plaintiff.").

The trial court viewed the evidence as addressing "anticipated" adverse impact on market values, *Brown v. United States*, 30 Fed.Cl. at 27. However, the affidavits submitted by the Browns can be understood to assert the existence of a present decline in market value and to attribute that decline directly to the overflights. The trial court therefore erred in concluding that evidence of an alleged direct, immediate, and substantial decrease in value of the Browns' property that is being overflown is irrelevant as a matter of law to the question of substantial interference under *Causby* and its progeny. The fact that the Browns continue to use the property themselves, while sharing that use with the Government's airplanes, is of no moment. As we said in *Hendler*, "[t]he Government does not have the right to declare itself a co-tenant-in-possession with a property owner. Among a citizen's—including a property owner's—most cherished rights is the right to be let alone." *Hendler*, 952 F.2d at 1374 (citations omitted). In *Herring v. United States*, 162 F.Supp. 769, 142 Ct.Cl. 695 (1958), the Court of Claims took note of the fact that the property owners "have kept

their property rented practically the entire time, and ... have not shown any monetary loss actually realized up to this time." *Id.* 162 F.Supp. at 771. The court nevertheless found a compensable taking, noting that the owners "will have great difficulty in disposing of the property at all, and when they come to do so, we think that they will suffer a loss of not less than $7,500, or perhaps more." *Id.*

Under the Government's view, the Government would be able to make uncompensated use of private property if that use did not immediately interfere with the landowner's current use. Thus, overflights could not give rise to compensable takings on land held for investment purposes or for future development. The Government effectively could preclude future, lawful uses of the property—uses which have been recognized and valued by the market before the overflights—without compensation to the owner, simply by making such uses undesirable or unprofitable. The Fifth Amendment does not permit the Government to destroy individual rights in that manner.

The Browns assert that Government overflights have substantially interfered with the enjoyment and use of their overflown property for recreational purposes and have reduced to agricultural use the potential uses of their property. The affidavits submitted by the Browns in opposition to the Government's summary judgment motion are sufficient to raise a genuine issue of material fact concerning these issues. Mr. Brown's affidavit asserts that there is a market for remote, quiet areas such as the property at issue. Mr. Neal's affidavit sets forth specific facts concerning (1) the existence of a market for open spaces such as the Browns' ranch; (2) the inclusion of the Brown ranch in that market; (3) the noise created by overflights; and (4) present decrease in market value. The trial court will have to weigh this and any other evidence presented by the Browns in support of their claim against the Government's evidence, if any, to the contrary.[5]

---

5. Any taking analysis is of course directed to that part of the property characterized by low and frequent overflights. The trial court found, and the parties do not dispute, that this area comprises roughly 100 acres of the Browns' property.

*Brown*, 30 Fed.Cl. at 25. Damage to the remaining land not overflown is consequential, and may be compensable under severance damages principles. *See Hendler*, 952 F.2d at 1383–84 & n. 15 (citing Aubrey V. Kendall & S.J. Plager, *Sever-*

The trial court expressed the concern, echoed by the Government, that recognizing liability for a decrease in "remoteness" or "tranquility" of land would expose the Government to limitless liability for every activity involving development of previously rural properties. This concern is misplaced. *Causby* and its progeny require direct, immediate and substantial interference with use and enjoyment. Clearly, minor, indirect, or speculative reductions in the value of property would not be enough. But we are unwilling to carve out an exception from the *Causby* rule for land used as a recreational retreat and valued for its seclusion and quietude, as the Government and trial court's approach would do. The Court of Federal Claims erred in reading *Causby* to preclude the Brown's claim as a matter of law and in granting the Government summary judgment on that basis.

The Browns argue that uncontroverted evidence shows that an easement in their property has been taken by the Government's overflights. We are not prepared to say, on the limited record before us and as a matter of law, that must be so. That is for the trial court to decide in the first instance, applying the correct standard to the facts of the case.

## CONCLUSION

We reverse the judgment for the Government and the dismissal of the complaint. We remand this case for determination of whether the Browns' property has been taken, and if so, how much compensation is due.

### *REVERSED AND REMANDED*

Each party to bear its costs.

*ance Damage in Eminent Domain Proceedings*, 10 U.Fla.L.Rev. 354 (1957)).