Michael M. JOHNSON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 00–140L.

United States Court of Federal Claims.

June 26, 2001.

Joseph A. Prokop, Jr., Baton Rouge, LA, for plaintiff.

Alan Brenner, U.S. Department of Justice, Washington, DC, with whom were John C. Cruden, Acting Assistant Attorney General, and Chief, General Litigation Jack Haugrud, for defendant.

## OPINION

FIRESTONE, Judge.

This is a fifth amendment takings case. Plaintiff Michael M. Johnson ("Johnson") is the sole shareholder of Johnson Properties, Inc. ("JPI"). JPI is the owner of a number of subsidiary companies that operate private sewage treatment plants in Louisiana. The present action arises from an order issued by the United States District Court for the

Western District of Louisiana in connection with an enforcement case against JPI. In 1998, the United States and the State of Louisiana commenced an enforcement action against JPI for violating various state and federal environmental laws. On March 22, 1999, after JPI failed to abide by the terms of the consent decree entered in the enforcement case, the district court entered an order appointing a receiver to take all actions necessary for JPI to achieve compliance with the environmental laws it had violated. Johnson appealed the appointment of the receiver to the United States Court of Appeals for the Fifth Circuit, on the grounds that the appointment amounted to a taking of property without just compensation in violation of the Fifth Amendment. On May 3, 2000, the Fifth Circuit dismissed Johnson's takings challenge for lack of standing.

While Johnson's appeal was pending in the Fifth Circuit, he filed the present case in which he also challenges the appointment of the receiver on takings grounds. The case is presently before this court on the government's motion for summary judgment. The government contends that the Fifth Circuit's ruling precludes the plaintiff from litigating his takings claim in this court and, in the alternative, that plaintiff has failed to state a valid takings claim.

Because the court finds that Johnson has failed to state a claim, the government's motion for summary judgment is **GRANTED**.

## BACKGROUND AND PROCEDURAL HISTORY

The following facts are not in dispute. Plaintiff Johnson is the vice president, chairman, and sole shareholder of JPI. JPI owns numerous subsidiary companies which are primarily engaged in the water and sewage treatment industry. This action arises from actions taken by JPI at its sewage treatment plants in Louisiana.

In 1998, the United States sued JPI and some of its subsidiaries alleging numerous violations of § 301 of the Clean Water Act ("CWA"), see 33 U.S.C. § 1311(a) (1994). The State of Louisiana intervened in the action as a plaintiff and added various state law violations to the complaint. Thereafter,

the parties negotiated a consent decree which was entered by the United States District Court for the Western District of Louisiana in 1998. The decree specified the actions JPI was required to take in order to abate its state and federal environmental violations, and established stipulated penalties to be paid in the event that JPI violated the decree. The decree stated that the district court would retain jurisdiction over the matter "until further order of the Court or until termination of [the] Consent Decree."

In February 1999, the United States and the State of Louisiana petitioned the district court for appointment of a receiver to ensure JPI's compliance with the terms of the consent decree. According to the federal and state governments' petition, JPI was not making adequate progress toward fully implementing the consent decree. Five months after the decree was entered, none of the solid waste treatment plants inspected was found to be in compliance with the terms of the decree: inspectors found 661 violations of the decree, including the continued release of raw sewage and sewage sludge into the environment.

Before the district court ruled on the governments' request for appointment of a receiver, on March 12, 1999, JPI filed a petition in the Middle District of Louisiana for Chapter 11 bankruptcy protection. JPI also filed an application for a stay of the enforcement action in the bankruptcy court. The bankruptcy court initially granted the stay. However, after a conference with the parties involved in the enforcement action, the bankruptcy judge concluded that the enforcement action was exempt from the automatic stay provision. JPI then noticed a motion for stay in the district court on March 15, 1999. The district court denied the motion, and JPI subsequently petitioned the Fifth Circuit for a writ of mandamus. On March 18, 1999, the Fifth Circuit denied the petition. *See In re Johnson Properties, Inc.*, No. 99–30264 (5th Cir.1999) (order denying petition for writ of mandamus).

Thereafter, the district court conducted a hearing on the governments' motion to appoint a receiver because of JPI's failure to

meet its consent decree obligations. On March 22, 1999, the district court granted the motion. Under the March 22, 1999 order, the receiver was given broad powers to perform all acts necessary to achieve compliance with the consent decree, including the authority to sell corporate property and to manage, control, and deal with "all items, assets, properties, contracts, and other matters incident to the Receiver's responsibilities." *United States v. Acadia Woods Add. # 2 Sewer Co.*, 41 F.Supp.2d 632, 633 (W.D.La.1999).

On April 22, 1999, Johnson, not JPI, appealed the order appointing a receiver to the Fifth Circuit on the grounds that the appointment resulted in a taking. In particular, Johnson argued that the receiver's right to sell corporate property in order to achieve compliance with the consent decree amounted to a taking of his private property without just compensation. On May 3, 2000, the Fifth Circuit dismissed Johnson's appeal for lack of standing, ruling as follows:

> [Johnson] contends that he will be permanently deprived of property because the receiver will sell some of JPI's subsidiaries' assets in order to finance the process of bringing the [sewage treatment plants] into compliance with the terms of the consent decree .... Johnson cannot complain that he will be injured because some of the subsidiaries' assets may be sold by the receiver. It is a well-established principle of corporate law that corporate assets belong to the corporation, not to the shareholder. Thus, the injury asserted by Johnson actually inheres to the corporation.... [W]e have not addressed the question whether a shareholder has standing to allege a taking of corporate assets. The Federal Circuit, which has, has only exercised jurisdiction over a derivative action asserting a takings claim when the action could be construed "as filed by a sole shareholder on behalf of a corporation alleging that compensation to the corporation will result in a surplus in which the shareholder possesses a direct interest." *We are not persuaded that Johnson has alleged such an interest here. As a result, we find that Johnson lacks standing to bring a takings claim or to assert one on appeal.*

*United States v. Acadiana Treatment Sys., Inc.*, 214 F.3d 1350 (table), No. 99–30476, slip. op. at 8–10 (5th Cir. May 3, 2000) (citations omitted) (emphasis added). The Fifth Circuit also noted that because JPI had filed for bankruptcy protection, only the bankruptcy trustee would have standing to assert JPI's rights. *Id.* at 9. *See* 11 U.S.C. § 541(a) (1994).

While the Fifth Circuit appeal was pending, Johnson filed the present action in this court alleging the same takings claim he had presented to the Fifth Circuit. In particular, Johnson claimed that the actions taken by the receiver appointed by the district court "in disposing of the [JPI subsidiary] corporations' assets is a taking for which Michael M. Johnson is due just compensation under the United States Constitution." On May 17, 2000, after the Fifth Circuit dismissed his appeal, Johnson filed an amended complaint in this court to address his standing to press this suit. In the amended complaint, Johnson alleged that as sole shareholder of JPI, "compensation to the business will result in a surplus in which the plaintiff, as sole owner of the business, possesses a direct interest," thereby conferring jurisdiction upon him.

On September 22, 2000, the government filed a motion for summary judgment. The government contends that the present action is barred by the Fifth Circuit's ruling. In the alternative, the government argues that plaintiff has failed to state a valid takings claim.

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See* Rule 56(c) of the Rules of the Court of Federal Claims. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact." *Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. 2505. In deciding whether summary judgment is appropriate, it is not the court's function "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. The movant need not "produce evidence" of the absence of a genuine dispute of material fact; instead, the movant need only point out that the record does not support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II. STANDING

■ The parties have devoted a large portion of their arguments to the question of whether the plaintiff has standing to bring a derivative shareholder suit in this court. The government takes the position that Johnson's action is barred by principles of collateral estoppel and that Johnson may not relitigate his standing in this court because of the Fifth Circuit's decision.[1] Johnson contends that he is not barred from asserting standing as a shareholder in this action because the Fifth Circuit did not resolve his standing as a shareholder. Plaintiff contends that the Fifth Circuit simply held that Michael M. Johnson, as an individual, did not have standing to assert the corporation's takings claim.

As noted above, the Fifth Circuit determined that Johnson could only bring a takings claim with respect to his corporation's property through a derivative shareholder suit. The Fifth Circuit went on to hold that under the standard established by the Federal Circuit, a plaintiff asserting shareholder standing must allege "that compensation to the corporation will result in a surplus in which the shareholder possesses a direct interest." Applying that standard to Johnson, the Fifth Circuit concluded, "we are not persuaded that Johnson has alleged such interest here. As a result, we find that Johnson lacks standing to bring a takings claim or assert one on appeal." *Acadiana Treatment Sys.*, No. 99–30476, slip. op. at 10.

The Fifth Circuit additionally noted that any claim by Johnson based on JPI's property interests was also barred by operation of the bankruptcy code. In a footnote, the Fifth Circuit stated, "because JPI has filed for bankruptcy, the bankruptcy trustee alone has standing to pursue a cause of action to enforce JPI's rights. *See* 11 U.S.C. § 541(a)." *Id.* at 9 n. 4.

■ The plain words of the Fifth Circuit's decision indicate that the court found that Johnson as an individual did not have standing and failed to properly assert a derivative shareholder interest. But the question posed to this court is whether the Fifth Circuit also decided that Johnson did not have standing as a shareholder to assert his action. As the Federal Circuit recently held in *Banner v. United States*, 238 F.3d 1348 (Fed.Cir.2001), for collateral estoppel to bar the litigation of an issue, four factors must be

1. Although the government originally argued that res judicata bars Johnson's case, that argument is not supported. Res judicata, generally speaking, "bars a second attempt to relitigate the same cause of action between the parties" to an earlier action, as well as any other claim or issue that could have been raised in that action. *United States v. Tatum*, 943 F.2d 370, 381 (4th Cir. 1991). *See also Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1577 (Fed.Cir.1991). However, res judicata only applies where there has been a judgment on the merits of the prior suit. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). A dismissal based on a lack of standing is a dismissal for lack of jurisdiction and therefore is not a judgment on the merits for purposes of res

judicata. *See St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir.2000).

While res judicata may not bar the suit, collateral estoppel may. Collateral estoppel is related to the doctrine of res judicata but "it can be applied to narrower portions of an action than is the case for res judicata." *Tatum*, 943 F.2d at 382. Collateral estoppel prevents the relitigation of an issue of fact or law that was settled in the previous litigation. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). A final judgment is not required for the operation of collateral estoppel. The issue here is whether the Fifth Circuit's determination regarding Johnson's standing as a shareholder precludes him from relitigating his shareholder standing in this case.

satisfied: 1) the issues are identical to those in a prior proceeding; 2) the issues were actually litigated; 3) the determination of the issues was necessary to the resulting judgment; and 4) the party defending against preclusion had a full and fair opportunity to litigate the issues. *Id.* at 1354 (citing *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1365–66 (Fed.Cir.2000)).

■ Tested by these standards, this court finds that Johnson is not barred by collateral estoppel from maintaining this derivative shareholder claim. The Fifth Circuit plainly held that the Johnson could not bring an action with respect to corporate assets as an individual, but it did not reach the same conclusion with respect to his ability to bring a claim as a shareholder. To the contrary, the Fifth Circuit concluded that Johnson had failed to allege a claim on behalf of the corporation as a shareholder. In such circumstances, the issue of Johnson's standing as a shareholder was not actually, and certainly not fully and fairly, litigated. Accordingly, under the *Banner* test, collateral estoppel does not bar Johnson from litigating this takings claim as a shareholder on behalf of his corporation.

The government argues in the alternative that even if Johnson has standing as a shareholder, his claim is still barred under the Bankruptcy Code. In particular, the government contends that the takings claim is still the property of JPI's bankruptcy estate. In this connection, both parties agree that under 11 U.S.C. § 541, once JPI filed for bankruptcy, the rights of action of the debtor corporation passed to the estate created by commencement of the bankruptcy proceedings. Thereafter, only the bankruptcy trustee appointed to represent the debtor's estate could bring suit. *See Steyr–Daimler–Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir.1988); *Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir.1984). Bankruptcy law, however, recognizes that a shareholder may pursue a claim with the express permission of the trustee or the bankruptcy court. *See In re Perkins*, 902 F.2d 1254, 1258 (7th Cir.1990). Under *Perkins*, "[a] trustee may be divested of this exclusive authority only in narrow circumstances. When (a) the trustee unjustifiably refuses a demand to pursue the action; (b) the creditor establishes a colorable claim or cause of action; and (c) the creditor seeks and obtains leave from the bankruptcy court to prosecute the action for and in the name of the trustee, then may an individual creditor or creditors' committee prosecute an action originally vested in the trustee." *Id.*

Johnson does not allege that he had the trustee's or bankruptcy court's permission to proceed with this case. Instead, Johnson asserts that he is allowed to pursue this action on the grounds that the trustee "abandoned" this takings claim. In particular, Johnson argues that now that the bankruptcy estate is closed, the claim has been abandoned and he is free to pursue the action in his shareholder capacity.

The procedures for abandonment of property by a bankruptcy estate are set forth in 11 U.S.C. § 554:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

Relying on these provisions, Johnson argues that the trustee abandoned the takings claim when the District Court for the Middle District of Louisiana issued its January 9, 2001 order, which directed that "the property of the estate remaining after the sale of busi-

ness assets be abandoned." The district court order stated:

> Any and all property of the bankruptcy estate of JPI, as consolidated with its subsidiary companies, that is not transferred as a result of the sale of assets and the terms of this chapter 11 plan be and is hereby deemed abandoned under the provisions of 11 U.S.C. § 554 as of entry of the order of confirmation of this plan.

Amended Plan of Reorganization, August 7, 2000, at 9.

The government argues in response that the takings claim is nonetheless still property of the bankruptcy estate because the claim was never properly abandoned within the meaning of the Bankruptcy Code. The government contends that in order for there to be a legal abandonment, the asset must be first identified and then affirmatively acted upon or rejected. *See In re Auto West, Inc.,* 43 B.R. 761, 764 (D.C.Utah 1984). "The language of [11 U.S.C. § 554] subsection (c) deems abandoned to the debtor any scheduled asset of the estate that remains unadministered at the close of the case. Any asset concealed from the trustee or not scheduled by the debtor, however, will not be deemed to have been abandoned. The word 'scheduled' in § 554(c) has a specific meaning and refers only to assets listed in a debtor's schedule of assets and liabilities." *In re McCoy,* 139 B.R. 430, 431–432 (Bankr. S.D.Ohio 1991).

There is no dispute that JPI, as debtor, never listed this takings claim as an asset of the bankruptcy estate, nor is there any evidence to suggest that the trustee in any way abandoned this claim. Because abandonment requires affirmative action or some other evidence of intent by the trustee, the government argues that the takings claim still belongs to the bankruptcy estate. *See Stein v. United Artists Corp.,* 691 F.2d 885, 890–91

(9th Cir.1982). The government notes that the fact that the JPI bankruptcy estate was "closed" does not alter this conclusion. *Id.* at 891 (citing *First Nat'l Bank of Jacksboro v. Lasater,* 196 U.S. 115, 25 S.Ct. 206, 49 L.Ed. 408 (1905) ("It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it.")); *Auto West,* 43 B.R. at 764 ("[C]ourts that have considered how unlisted assets are to be pursued after confirmation of a reorganization plan have concluded that when a bankrupt fails to list an asset there can be no abandonment.").

While Johnson acknowledges these precedents, he argues that he should not be bound by them. He argues that under the unique circumstances of this case, the court should presume abandonment of the takings claim. First, Johnson asserts that under the terms of the district court order appointing the receiver, he was obliged to not interfere with the receiver's actions and therefore was precluded from listing the claim as an asset, or suggesting to the receiver that he ought to do so. Johnson argues that in this case listing the claim with the trustee/receiver would have in effect been viewed as challenging the trustee/receiver's actions. Second, Johnson argues that because the trustee was also acting in the capacity of the receiver, the trustee was fully aware of the claim, and this knowledge obviated the requirement that the claim be formally abandoned.[2]

While the question is close, the court agrees with the government that under the existing precedent, the plaintiff's takings claim was never listed and therefore it was never formally abandoned. Although it is highly unlikely that the trustee/receiver would have brought this takings claim, the

---

**2.** In making this argument at oral argument, Johnson suggested that the district court acted in error by appointing the same individual to serve as both the receiver and the trustee in this instance. Although Johnson did not seriously challenge the district court on this matter, it should be noted that this type of collateral attack cannot be permitted before this court. *See Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 495–496, 53

S.Ct. 721, 77 L.Ed. 1331 (1933) (holding that collateral attack can be successful only where and to the extent that it discloses want of power as distinguished from error in exercise of power). The action taken by the district court carries with it a presumption of regularity, *Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (overruled on other grounds), and as such cannot be attacked before this court.

bankruptcy rules indicate that the trustee should ordinarily be given the opportunity to do so. As such, if this court were to determine that Johnson had a potentially valid takings claim, it would require dismissal. However, because the court concludes for the reasons that follow that the plaintiff does not, in fact, have a valid takings claim, there is no reason for the plaintiff to return to the bankruptcy trustee to determine whether he would agree to abandon the claim. Where, as here, there is no legally-recognized claim for the trustee to abandon, there is no reason to require formal abandonment.

## III. TAKINGS CLAIM

█ At the heart of this case is plaintiff's mistaken belief that the actions of the receiver gave rise to a takings claim. As the government correctly argues, appointment of a receiver to ensure compliance with a consent judgment does not implicate the takings clause.

Invoking the analytical framework employed in cases involving the physical occupation and control of property, Johnson argues that the court's appointment of a receiver to attain compliance with the consent decree amounts to a "per se taking." To make this argument, Johnson relies upon the Supreme Court decisions in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), and *United States v. Pewee Coal Co., Inc.*, 341 U.S. 114, 71 S.Ct. 670, 95 L.Ed. 809 (1951). Johnson argues that under the standards set by the Supreme Court in these two cases, the actions of the receiver in taking over JPI's sewage treatment plants and in selling its corporate assets amounts to a per se taking.[3]

Johnson's reliance on *Loretto* and *Pewee Coal* is misplaced. The Federal Circuit has examined the limits of per se takings analysis in the context of enforcement proceedings and has held that the "taking" of property in connection with a proceeding to enforce the law does not give rise to a per se taking. In particular, the Federal Circuit explained in *Branch v. United States*, 69 F.3d 1571 (Fed. Cir.1995), that an enforcement action that

results in the seizure of property cannot be challenged as a taking. Rejecting the application of *Loretto* and *Pewee Coal* in an enforcement context, the court stated:

> If the State of New York had seized Loretto's property after she failed to pay a tax liability, or if the federal government had seized the assets of the Pewee Coal Company after the company failed to pay a large civil penalty, the seizure of the property would not be a taking. In such cases, the tax assessment or civil penalty might be challenged on Takings Clause or other constitutional grounds, but if those assessments survived constitutional scrutiny, the consequent enforcement action, including seizure of the property, could not be challenged as a taking.

*Branch*, 69 F.3d at 1576 (citing *United States v. Garcia*, 474 F.2d 1202, 1205 (5th Cir. 1973)).

Thus, under the Federal Circuit's test, Johnson can only prevail on his takings claim if he can show that the underlying action—here the consent decree—amounted to a taking. If the consent decree did not give rise to a taking, then a court order to ensure compliance with that decree could not give rise to a taking. Plainly, Johnson cannot show that the consent decree gave rise to a taking. Johnson's corporation "consented" to the subject judgment and agreed to come into compliance with the law. In such circumstances, he cannot claim that the underlying action was a taking.

In an effort to distinguish his case from *Branch*, Johnson argues that the appointment of the receiver went beyond enforcement of the underlying consent judgment, which only called for stipulated penalties. Although Johnson does not question the district court's authority to appoint a receiver, he contends that the appointment was separate from enforcement of the consent decree. He argues that the court allowed the government to simply take over his business for the public purpose of providing water and sewage services.

The court will therefore limit its analysis to a per se takings analysis.

---

3. Johnson expressly represents that the receiver's actions do not give rise to a regulatory taking.

A review of the order appointing the receiver plainly contradicts Johnson's view. The impetus for the establishment of the receivership was to end JPI's continued violation of environmental laws and to protect public health. *Acadia Woods Add. # 2 Sewer Co.*, 41 F.Supp.2d, at 635. Five months after the consent decree was entered, inspectors from the United States Environmental Protection Agency and the Louisiana Department of Environmental Quality found 661 violations of the consent decree, including the continued release of raw sewage and sewage sludge into the environment. As a result, the District Court for the Western District of Louisiana appointed the receiver and granted him broad powers to perform all acts necessary to achieve compliance with the consent decree, including the authority to sell corporate property, and to manage, control, and deal with "all items, assets, properties, contracts, and other matters incident to the receiver's responsibilities." *Id.* at 2.

It is well-settled law that courts have broad authority to enforce their judgments with orders such as the one at issue here. *See Holland v. N.J. Dept. of Corrections*, 246 F.3d 267, 282–83 (3d Cir.2001) (citations omitted) (holding "the broad remedial power contained within the modification and compliance enforcement powers can be used to extend a consent decree"); *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 996 (9th Cir.2000) (citations omitted) (holding that a challenged consent decree "implicitly contemplated the appointment of a special master because the court retained authority to establish procedures for ensuring compliance with the decree"). Accordingly, because the order establishing the receiver was an order tied to the enforcement of the district court's judgment, this court finds that the order and the appointment of the receiver fall squarely outside the takings clause.[4]

In this connection, the court agrees with the government that the appointment of a receiver with broad authority over JPI's property is analogous to a lawful forfeiture under a forfeiture statute. More specifically, the Supreme Court has held that the government is not required to compensate an owner for property which it has lawfully acquired under the exercise of governmental authority other than eminent domain. *Bennis v. Mich.*, 516 U.S. 442, 452–53, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) (concurring opinion) (citing *United States v. Fuller*, 409 U.S. 488, 492, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973)). In *Bennis*, the government had acquired the subject property through a lawful forfeiture; here, a court-appointed receiver has been given authority over JPI's property under a lawful exercise of the court's power to enforce its judgments. In both situations the conclusion is the same: the government's (here the court's) action does not give rise to a taking because the government is acting under other lawful authority. Indeed, the Federal Circuit has expressly noted that the seizure or occupation of property in connection with enforcement of the law does not implicate the takings clause. *See Brown v. United States*, 73 F.3d 1100, 1103 n. 3 (Fed. Cir.1996) (citations omitted).[5]

In sum, the takings clause is not implicated by the district court's action in ordering compliance with the consent decree through the appointment of a receiver with broad rights and responsibilities. The government's motion in the alternative, for summary judgment on the basis that the plaintiff

4. In a recent decision, Judge Loren Smith of this court opined that there is the potential for a compensable "judicial taking" in certain circumstances where "a court's decision that does not even 'arguably conform [ ] to reasonable expectations' in terms of relevant law of property rights effects a 'retroactive transformation of private into public property.'" *Ultimate Sportsbar v. United States*, 48 Fed.Cl. 540, 550 (2001) (citations omitted). However, because Johnson does not contend that the district court's actions in this case constitute a "judicial taking," this court need not consider this issue. Moreover, the authorities relied upon by Judge Smith have no bearing on the judicial action at issue here, namely, enforcement of an order designed to enforce the judgment of a district court.

5. The government also argues that where, as here, a defendant's violations constitute a nuisance, there can be no taking when the government seeks to abate that nuisance. Because the court concludes that enforcement of the consent decree does not implicate the takings clause, the court does not reach this additional argument regarding the character of JPI's consent decree violations.

has failed to state a valid takings claim, is **GRANTED**.

### CONCLUSION

Because Johnson has failed to state a valid takings claim against the government, Johnson has failed to state a claim for which this court can accord relief. Defendant's motion for summary judgment is therefore **GRANTED** and the case is accordingly dismissed. Each party shall bear its own costs.